Case No. 23-13297-D

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

AL RUSHAID PETROLEUM INVESTMENT COMPANY AND
AL RUSHAID TRADING COMPANY,
*Plaintiffs-Appellants,*

v.

SIEMENS ENERGY, INC.,
*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
CASE NO. 6:21-CV-02062-WWB-EJK

**APPELLANTS' OPENING BRIEF**

Ronald D. Edwards, Jr., Esq.
Lowndes Drosdick Doster
Kantor & Reed PA
215 North Eola Drive
Orlando, Florida 32802

*Counsel for Appellants*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and the accompanying Eleventh Circuit Rules, Appellants, Al Rushaid Petroleum Investment Company ("ARPIC") and Al Rushaid Trading Company ("ARTC"), state as follows:

ARPIC and ARTC are not publicly traded, they have no parent corporations, and no publicly held corporations own 10% or more of their respective stock.

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Eleventh Circuit Rules 26.1-1 to 26.1-3, ARPIC and ARTC hereby identify the following trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case:

1.  ARPIC (Plaintiff-Appellant)

2.  ARTC (Plaintiff-Appellant)

3.  Avila, Jodi Ann (counsel for Defendant-Appellee)

4.  Baker & McKenzie, LLP (counsel for Defendant-Appellee)

5.  Berger, Hon. Wendy W. (Assigned District Court Judge)

6.  Calcagni & Kanefsky, LLP (counsel for Plaintiffs-Appellants)

7.  Cook, Brendan Donald (counsel for Defendant-Appellee)

8.  Davis, Benjamin Cody (counsel for Defendant-Appellee)

9.  Edwards, Jr., Ronald D. (counsel for Plaintiffs-Appellants)

10.    Giles, Courtney E. (counsel for Defendant-Appellee)

11.    Kanefsky, Eric T. (counsel for Plaintiffs-Appellants)

12.    Kidd, Hon. Embry J. (Magistrate Judge)

13.    LeMay, Taylor J. (counsel for Defendant-Appellee)

14.    Lowndes, Drosdick, Doster, Kantor & Reed, P.A. (counsel for Plaintiffs-Appellants)

15.    Musiakiewicz, Kevin J. (counsel for Plaintiffs-Appellants)

16.    Roppolo, Jr., William Vito (counsel for Defendant-Appellee)

17.    Siemens Energy, Inc. (Defendant-Appellee)

Dated:  December 15, 2023        Respectfully submitted,


By:  */s/ Ronald Edwards Jr.*

Ronald Edwards, Jr.
LOWNDES, DROSDICK, DOSTER,
KANTOR & REED, P.A.
215 North Eola Drive, P.O. Box 2809
Orlando, Florida 32802
Tel.: (407) 843-4600
Ronny.EdwardsJr@lowndes-law.com

*Counsel for Appellants*

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Counsel for ARPIC and ARTC respectfully requests oral argument pursuant to Federal Rule of Appellate Procedure 34.  This case presents a complex set of facts and questions of law, including a unique perspective on the privilege to interfere with an existing business contract.  Oral argument will aid the Court in understanding the factual and legal issues presented.

# **TABLE OF CONTENTS**

PAGE

CORPORATE DISCLOSURE STATEMENT ...................................................C-1

CERTIFICATE OF INTERESTED PERSONS .................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ............................................ i

TABLE OF CITATIONS................................................................................ v

STATEMENT OF JURISDICTION ................................................................ viii

STATEMENT OF THE ISSUES ...................................................................... 1

INTRODUCTION ......................................................................................... 1

STATEMENT OF THE CASE ........................................................................ 2

A. Factual Allegations ............................................................................... 2

    1. Background. ...................................................................................... 2

    2. Al Rushaid Establishes DRG's Presence in Saudi Arabia........................... 2

    3. Al Rushaid Secures an Award to DRG of a Lucrative Corporate
    Procurement Agreement with Saudi Aramco. ............................................... 3

    4. ARPIC and a DRG Affiliate Form the Joint Venture and Enter into a Business
    Venture Agreement. ........................................................................... 5

    5. SEI Acquires DRG and its Subsidiaries and Causes Them to Breach the Sales
    Agency Agreements and BVA and Divert Business Opportunities from the
    Joint Venture.................................................................................. 6

        a. ARPIC and ARTC Become Expendable.............................................. 8

b. SEI Intentionally Interferes with ARPIC. .............................................. 9

c. SEI Intentionally Interferes with ARTC. ..............................................10

B. The Initial Complaint .........................................................................11

C. The District Court's Dismissal of the Initial Complaint ...................................11

D. The First Amended Complaint ........................................................................12

E. The District Court's Dismissal of the First Amended Complaint ......................14

STANDARD OF REVIEW ...................................................................................16

SUMMARY OF THE ARGUMENT ....................................................................17

ARGUMENT........................................................................................................19

I. The District Court Erred in Dismissing ARPIC's Tortious Interference Claims...................................................................................................19

A. SEI Is a "Stranger" to the BVA. ...............................................................20

B. ARPIC Sufficiently Alleged that SEI Acted with Pure Malice and Employed Improper Means. ............................................................................................23

II. The District Court Erred in Dismissing ARTC's Tortious Interference Claims...................................................................................................28

A. SEI Is a "Stranger" to the Sales Agency Agreements. .................................28

B. ARTC Sufficiently Alleged that SEI Acted with Pure Malice and Employed Improper Means ................................................................................................30

III. The District Court Erred in Dismissing ARPIC's Unfair Competition Claim. .32

A. ARPIC's Unfair Competition Claim Is Clear and Definitive. .......................32

B. SEI and ARPIC Compete for the Same Customer. .......................................35

IV. The District Court Erred in Dismissing ARTC's Unjust Enrichment Claim....36

CONCLUSION .................................................................................................39

# TABLE OF CITATIONS

C<small>ASES</small>

*Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273 (S.D. Fla. 2009)......38

*Adinolfe v. United Techs. Corp.*, 768 F.3d 1161 (11th Cir. 2014) ........................37

*Advantor Sys. Corp. v. DRS Tech. Servs, Inc.*, No. 6:14-CV-533-ORL-31DAB,
    2014 WL 3747667 (M.D. Fla. July 29, 2014) ..................................................25

*Alticor v. UMG Recordings, Inc.*, No. 6:14-CV-542-ORL-37, 2015 WL 736346
    (M.D. Fla. Feb. 20, 2015) ...................................................................................24

*Ameritox, Ltd. v. Milennium Lab'ys, Inc.*, No. 8:11–cv–775–T–24–TBM,
    2012 WL 33155 (M.D. Fla. Jan. 6, 2012).........................................................33

*Ancata v. Prison Health Serv., Inc.*, 769 F.2d 700 (11th Cir. 1985).......................16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)...................................................................17

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...........................................16

*Bluesky Greenland Env't Sols., LLC v. 21st Century Planet Fund, LLC,
    985 F. Supp. 2d 1356 (S.D. Fla. 2013)...................................................25, 27, 31

*Bray & Gillespie Management LLC v. Lexington Ins. Co.*,
    527 F. Supp. 2d 1355, (M.D. Fla. 2007)......................................................27, 31

*Burger King Corp. v. Ashland Equities, Inc.*, 161 F. Supp. 2d 1331
    (S.D. Fla. 2001) ..................................................................................................24

*CSDS Aircraft Sales & Leasing, Inc. v. Lloyd Aereo Boliviano Airlines*,
    No. 09-CIV-22274, 2011 WL 1559823 (S.D. Fla. Apr. 22, 2011)...............24, 27

*Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812 (Fla. 1994) ............23

*G.M. Brod. & Co. v. U.S. Home Corp.*, 759 F.2d 1526 (11th Cir. 1985) ...............25

*Glob. Tech Led, LLC v. Hilumz Int'l Corp.*, 2017 WL 588669
  (M.D. Fla. Feb. 14, 2017)....................................................34

*Gulf Coast Turf & Tractor LLC v. Kubota Tractor Corp.*,
  No. 8:17-cv-2787-T-24, 2019 WL 1227776 (M.D. Fla. Mar. 15, 2019).............24

*Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003) ...........................16

*\*Hyatt Corp. v. Epoch-Florida Capital Hotel Partners, Ltd.*, No. 6:07-CV-1260-
  ORL-KRS, 2008 WL 490121 (M.D. Fla. Feb. 20, 2008) ................20, 26, 28, 30

*KMS Restaurant Corp. v. Wendy's International, Inc.*, 361 F.3d 1321
  (11th Cir. 2004) ................................................................25

*Kowalski v. Jackson Nat. Life Ins. Co.*, 981 F. Supp. 2d 1309 (S.D. Fla. 2013).....38

*Kronotex USA, LLC v. Hodges*, No. 07-CIV-21939, 2008 WL 11406179
  (S.D. Fla. Apr. 25, 2008)......................................................31

*\*Mfg. Rsch. Corp. v. Greenlee Tool Co.*, 693 F.2d 1037
  (11th Cir. 1982) ........................................................18, 24, 27

*Remember Everyone Deployed Inc. v. AC2T Inc.*, No. 20-CV-62355,
  2021 WL 1200421 (S.D. Fla. Mar. 8, 2021).......................................34

*Sentco, Inc. v. McCulloh*, 68 So.2d 577 (Fla. 1953) .............................34

*Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d
  1213 (S.D. Fla. 2009) .........................................................37

*Slip-N-Slide Records, Inc. v. TVT Records, LLC*, No. 05-21113-CIV, 2007 WL
  3232274 (S.D. Fla. Oct. 31, 2007)..............................................25

*Stephens v. Dep't of Health and Human Servs.*, 901 F.2d 1571
  (11th Cir. 1990) ...............................................................16

*\*Thermolife Int'l, LLC v. Vital Pharms, Inc.*, No. 19-CV-61380, 2020 WL
  6781749 (S.D. Fla. Nov. 18, 2020)..............................................35

*\*Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 1314
  (M.D. Fla. 2007) ...............................................................34

*Tracfone Wireless, Inc. v. Access Telecom, Inc.*, 642 F. Supp. 2d 1354
   (S.D. Fla. 2009) ...................................................................................38

*U.S. Commodity Futures Exch. v. Vision Fin. Partners, LLC*,
   190 F. Supp. 3d 1126 (S.D. Fla. 2016) .............................................16

*Walter v. Jet Aviation Flight Servs., Inc.*, No. 9:16-CV-81238, 2016 WL 7116641
   (S.D. Fla. Dec. 7, 2016)......................................................................23

*Whetstone Indus., Inc. v. Yowie Grp. Ltd.*, No. 3:17-CV-1286-J-20PDB,
   2019 WL 13177819 (M.D. Fla. Aug. 15, 2019) ...............................27

*Williams v. Wells Fargo Bank, N.A.*, No. 11-CIV-21233, 2011 WL 4901346
   (S.D. Fla. Oct. 14, 2011) ....................................................................37

*Wilson v. EverBank, N.A.*, 77 F. Supp. 3d 1202 (S.D. Fla. 2015) .................37, 38

RULES

F.R.C.P. 8(d)(2) ......................................................................................37

TREATISES

Restatement (Second) of Torts § 767 cmt. I ..........................................24

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. As alleged in the First Amended Complaint ("FAC") (Doc. 39)[1] and further detailed in Appellants' pending motion for leave to amend pursuant to 28 U.S.C. § 1653 (App. Doc. 21)[2]: (i) ARPIC and ARTC are limited liability companies organized under the laws of the Kingdom of Saudi Arabia with their principal and sole places of business in Al Khobar, Saudi Arabia; (ii) the shareholders/members of ARPIC and ARTC were or are citizens of Saudi Arabia with their principal and sole places of business or residence in Al Khobar, Saudia Arabia; and (iii) Appellee Siemens Energy, Inc. ("SEI" or "Siemens") is a corporation organized under the laws of Delaware with its principal place of business in Orlando, Florida.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

Appellants timely appealed. The district court entered its Order dismissing the FAC and closing the case on September 12, 2023. (Doc. 62). Appellants filed their notice of appeal on October 6, 2023. (Doc. 63).

---

[1] "Doc." refers to the district court docket. References to the record in this brief are to the district court docket number and page number. Documents relevant to this appeal that were originally filed on the district court's docket are also included in Appellants' Appendix.

[2] "App. Doc." refers to this Court's docket.

## STATEMENT OF THE ISSUES

1.     Whether the district court erred in dismissing ARPIC's tortious interference claims (the First through Seventh Counts of the FAC).

2.     Whether the district court erred in dismissing ARTC's tortious interference claims (the Ninth and Tenth Counts of the FAC).

3.     Whether the district court erred in dismissing ARPIC's unfair competition claim (the Eighth Count of the FAC).

4.     Whether the district court erred in dismissing ARTC's unjust enrichment claim (the Eleventh Count of the FAC) without considering the substance of ARTC's allegations or the merits of SEI's arguments.

## INTRODUCTION

From the mid-1990s to 2009, ARTC was so successful in promoting the brand of Dresser-Rand Group ("DRG") in Saudi Arabia that the most coveted customer in the oil and gas industry—the Saudi Arabian Oil Company ("Saudi Aramco")—awarded a joint venture between ARPIC, an affiliate of ARTC, and Dresser-Rand International, B.V. ("DRIBV"), a subsidiary of DRG, the opportunity to manufacture and service equipment for many of its projects. Since paying billions of dollars to acquire DRG in 2015, however, SEI has hijacked for itself hundreds of millions of dollars in contracts and purchase orders belonging to the joint venture and denied ARTC payment of millions of dollars in outstanding commissions.

ARPIC and ARTC bring this appeal because the district court ignored the liberal pleading standard, distorted or disregarded key allegations, misapplied relevant authority, and resolved factual issues that should have been reserved for summary judgment or a trial in dismissing their claims and closing the underlying case.

## STATEMENT OF THE CASE

### A. Factual Allegations

#### 1. Background.

Prior to mid-2016, companies from outside the Middle East seeking to do business in Saudi Arabia faced significant challenges. For instance, only companies from Saudi Arabia, Kuwait, Qatar, Oman, Bahrain, and the United Arab Emirates were permitted to engage in trading and retail activities without a local Saudi partner. (Doc. 39 – Pg. 6). Since its inception in 1978, Al Rushaid Group ("Al Rushaid") has acted as the Saudi partner for companies seeking to respond to the development needs of Saudi Arabia and penetrate the Saudi market. (Doc. 39 – Pg. 6).

#### 2. Al Rushaid Establishes DRG's Presence in Saudi Arabia.

More than thirty years ago, executives of DRG, then a relatively modest-sized manufacturer of certain equipment for the oil and gas industry with limited reach beyond the United States, engaged ARTC to introduce and develop DRG's brand in Saudi Arabia, with a particular focus on Saudi Aramco. (Doc. 39 – Pg. 7). With

over 76,000 employees and annual revenues of over \$300 billion, Saudi Aramco effectively controls the Saudi oil and gas market. (Doc. 39 – Pg. 7).

In January 1994, DRIBV and ARTC entered a Sales Representation Agreement (the "SRA"), pursuant to which ARTC became the exclusive agent and earned commissions for the sale of certain DRG products in Saudi Arabia. (Doc. 39 – Pg. 7). DRIBV and ARTC also entered an Aftermarket Sales Representation Agreement (the "ASRA"), pursuant to which ARTC became the exclusive agent and earned commissions for the solicitation of orders in Saudi Arabia for the "field service, repairs and spare parts" related to the products covered by the SRA. (Doc. 39 – Pg. 8).

Under the SRA and ASRA (collectively, the "Sales Agency Agreements"), ARTC effectuated large-scale sales of DRG products, introduced DRG to strategic partners in the region, built a substantial presence for DRG in the Saudi market, and generated significant commissions, millions of dollars of which remain outstanding. (Doc. 39 – Pg. 8).

### 3. Al Rushaid Secures an Award to DRG of a Lucrative Corporate Procurement Agreement with Saudi Aramco.

In March 2009, Saudi Aramco awarded DRG a Corporate Procurement Agreement (the "CPA"), pursuant to which DRG would manufacture, service, and repair turbines, compressors, and other heavy equipment for Saudi Aramco's oil and gas projects. (Doc. 39 – Pg. 9). The CPA was awarded to DRG on two conditions.

*First*, the CPA required DRG to form a joint venture with an entity within Al Rushaid under the name of "Dresser Arabia, LLC" (the "Joint Venture") to fulfill purchase orders issued under the CPA. (Doc. 39 – Pg. 11). *Second*, the CPA required that the Joint Venture construct a state-of-the-art facility in Saudi Arabia to fulfill the purchase orders and develop employment opportunities for Saudi citizens. (Doc. 39 – Pg. 12). These requirements were memorialized in the Local Content Accord to the CPA. (Doc. 39 – Pg. 12).

The Local Content Accord defined the "Scope of Local Operations" to be performed by the Joint Venture to include, *inter alia*: (i) "[t]he manufacturing of Dresser-Rand general purpose steam turbines"; (ii) "[t]he packaging of Dresser-Rand centrifugal and reciprocating compressors, including drivers such as motors and turbines"; (iii) "[t]he repairing, revamping and upgrading of Dresser-Rand name plate . . . as well as non-nameplate compressors (including internally geared compressors), electronic motors, generators, and steam, power and gas turbines"; and (iv) "[t]he provision of technical support services in relation to turbines, compressors, motors, and generators, including installation, systems integration, maintenance, project management, condition monitoring, parts inventory management and training." (Doc. 39 – Pg. 12).

The CPA promised to be lucrative. According to DRG's own financial forecasts, the revenues for the sale of equipment alone were anticipated to exceed $140 million, and the revenues for the maintenance and repairs were expected to be much greater. (Doc. 39 – Pg. 9). It was understood that while the early years of the Joint Venture would be laden with heavy expenses associated with the construction of a facility and ramping up the operation, the true value of the enterprise was the long-term, recurring revenues it would eventually earn from the repair and maintenance of all Saudi Aramco's heavy equipment. (Doc. 39 – Pg. 10).

4.    **ARPIC and a DRG Affiliate Form the Joint Venture and Enter into a Business Venture Agreement.**

Immediately after the execution of the CPA, ARPIC and a DRG affiliate, Dresser-Rand Holdings ("DRH"), entered a Business Venture Agreement (the "BVA") governing the Joint Venture. (Doc. 39 – Pg. 14). The BVA defines the "Scope of Business" of the Joint Venture to include the same equipment and services as the "Scope of Local Operations" set forth in the CPA. (Doc. 39 – Pgs. 15-16). In May 2014, DRH and ARPIC entered a Shareholders' Resolution to amend the Articles of Association for the Joint Venture to establish a services branch for the operation, repair, maintenance and technical support services of industrial and heavy equipment, pumps, and instruments for oil, gas, and other industries regardless of whether such was equipment was manufactured by the Joint Venture. (Doc. 39 – Pg. 20).

The BVA generally prohibits the parties from directly competing within the Joint Venture's Scope of Business and imposes affirmative obligations on the owners of the Joint Venture to, in certain instances, prioritize the Joint Venture's business opportunities over their other business ventures in Saudi Arabia. (Doc. 39 – Pg. 16).

5.     **SEI Acquires DRG and its Subsidiaries and Causes Them to Breach the Sales Agency Agreements and BVA and Divert Business Opportunities from the Joint Venture.**

Despite its size, diversity, and worldwide reach, Siemens had no meaningful presence in the oil or gas industry through at least 2010. (Doc. 39 – Pg. 20). Though it had been a leading manufacturer of gas turbines and compressors, that equipment was limited to power generation for building-based industrial applications and processes, as well as for rail, air, and water transportation. (Doc. 39 – Pg. 20). Thus, as of 2010, Siemens did not have the engineering, product line, ability, or capacity to fulfil the field-based needs of Saudi Aramco and other producers of oil and gas in the Middle East. (Doc. 39 – Pg. 21).

Commencing in or about 2010, Siemens began to implement its plan to enhance its local presence in Saudi Arabia and become a pivotal player in the oil and gas industry. (Doc. 39 – Pg. 21). In or about 2011, Siemens, together with Saudi Aramco and Saudi Electric Company, jointly committed to build turbine

manufacturing facilities in the Dammam Industrial District (the "Siemens Facility").

(Doc. 39 – Pg. 21).

Three years later, Siemens announced that it had reached an agreement whereby SEI would acquire DRG. (Doc. 39 – Pg. 21). According to Siemens' own statements, the acquisition was attractive to SEI for many reasons. First and foremost, the acquisition would expand Siemens' product line to include large steam and gas turbines, compressors, and other reciprocating equipment and, in turn, greatly improve Siemens' position in the oil and gas market. (Doc. 39 – Pg. 21). For example, in a PowerPoint presentation dated September 2014 and entitled "Executing Vision 2020—Acquisition of Dresser Rand," Siemens emphasized that: (i) DRG was responsible for the lion's share of all installed turbines and compressors in the oil and gas industry; (ii) DRG's portfolio consisted of important products that were not part of Siemens' existing portfolio; and (iii) even where there was some overlap, the focus of the companies' respective products was very different—DRG's products focused on oil and gas whereas Siemens' products focused on industrial applications. (Doc. 39 – Pgs. 21-22). Thus, as Siemens put it: "Together, Dresser-Rand and Siemens [would] offer a highly attractive portfolio for oil and gas customers." (Doc. 39 – Pg. 22). The Joint Venture was particularly attractive to Siemens because Saudi Aramco was investing heavily in the expansion of its operations and the combination of the Joint Venture's unique ability to manufacture

and service field equipment, its long-term, lucrative relationship with Saudi Aramco, and the proprietary information and trade secrets shared by ARPIC, would provide Siemens with a "turn key," low-risk entry into and the ability to grow in the Saudi oil and gas market.  (Doc. 39 – Pg. 23).

The acquisition via Siemens Energy also allowed Siemens to reap the long-term benefits of DRG's service and repair revenues.  (Doc. 39 – Pg. 23).  As Siemens touted in its PowerPoint presentation, DRG's "service revenue streams via large installed bases"—which then accounted for fifty percent (50%) of DRG's total revenues—would provide Siemens with "[s]olid double digit margins" "from day one."  (Doc. 39 – Pg. 23).

### a.  ARPIC and ARTC Become Expendable.

By the time the acquisition was completed in mid-2015, ARTC became expendable to Siemens and DRG because Siemens already had a long-standing sales agency relationship with a local Saudi partner (Juffali).  (Doc. 39 – Pg. 23).  ARPIC's participation in the Joint Venture was likewise no longer necessary because (i) the Joint Venture had already endured the expense-laden start-up period associated with the construction of the JV Facility and was about to earn the long-awaited profits yielded by the service, repair, and maintenance, and (ii) Saudi law no longer required the participation of a Saudi-based partner in a joint venture.  (Doc. 39 – Pg. 24).

### b.     SEI Intentionally Interferes with ARPIC.

Shortly after the acquisition, SEI launched a strategic, multi-faceted campaign to interfere with and injure ARPIC.  *First*, as ARPIC first learned in 2019, SEI has been tortiously interfering with ARPIC's contractual rights under the BVA by fulfilling purchase orders issued under the CPA outside of the Joint Venture and denying ARPIC its proportionate share of the related benefits.  (Doc. 39 – Pg. 24).

*Second*, SEI repeatedly engaged in separate and distinct acts of tortious interference with ARPIC's rights under the BVA by securing and fulfilling other contracts and opportunities that fall within the Joint Venture's Scope of Business and, but for SEI's interference, would have been awarded to and fulfilled by the Joint Venture.  (Doc. 39 – Pg. 24).  By way of example:

- In or about 2017, Siemens was awarded a contract in connection with the construction of a new heat and power plant in Saudi Arabia that required SEI to manufacture and supply equipment that was part of the Joint Venture's product line (the "Saudi Power Plant Contract").

- In July 2020, SEI entered a contract with Saudi Aramco to provide compressor systems for the Hawiyah Unayzah Gas Reservoir Storage project that included DRG legacy products and other equipment within the Joint Venture's Scope of Business (the "Hawiyah Reservoir Contract").

- In February 2021, SEI contracted with Saudi Aramco to supply more than 20 high-efficiency compressors—the same type of high-efficiency compressors that were to be manufactured and serviced by the Joint Venture—for Aramco's Tanajib Plant facilities (the "Tanajib Plant Contract").

- On March 31, 2021, Saudi Aramco signed a 15-year service contract with SEI, pursuant to which SEI has become the exclusive provider and servicer of a wide range of turbines and generators within the Joint Venture's Scope of Business for four of Saudi Aramco's major oilfields (the "Long-Term Service Contract").

(Doc. 39 – Pg. 25).

*Third*, SEI has tortiously interfered with ARPIC's contractual rights by causing DRH to breach the BVA and engage in contracts and business relationships that compete with the Joint Venture. (Doc. 39 – Pg. 27).

*Fourth*, SEI has engaged in unfair competition to divert the foregoing and other contracts that belong to the Joint Venture. (Doc. 39 – Pg. 27). For example, because SEI knows that the CPA was expressly conditioned on ARPIC's participation in the Joint Venture and construction of the JV Facility, SEI has been falsely representing to Saudi Aramco that ARPIC has been actively involved in the Joint Venture when, in fact, (i) SEI has purposely excluded ARPIC from all aspects of the Joint Venture, and (ii) SEI has been fulfilling purchase orders issued under the CPA and the other aforementioned contracts at the Siemens Facility and denying ARPIC all related benefits. (Doc. 39 – Pg. 27).

### c. SEI Intentionally Interferes with ARTC.

Since the acquisition, SEI has also tortiously interfered with ARTC's contractual rights by causing DRH to breach the Sales Agency Agreement and refuse to pay the commissions owed to ARTC. (Doc. 39 – Pg. 28).

**B.     The Initial Complaint**

ARPIC and ARTC filed their initial Complaint on December 8, 2021.  (Doc. 1) (the "Initial Complaint").  The Initial Complaint contained four causes of action. In Count I, ARPIC alleged that SEI tortiously interfered with ARPIC's contractual rights by: (i) causing DRH to breach various provisions of the BVA; (ii) diverting and keeping for itself contracts and business opportunities belonging to the Joint Venture, including purchase orders issued pursuant to the CPA, the Saudi Power Plant Contract, the Hawiyah Reservoir Contract, the Tanajib Plant Contract, the Long-Term Service Contract, and other contracts yet to be identified.  (Doc. 1 – Pgs. 24-26).  In Count II, ARPIC alleged that SEI engaged in unfair competition by, among other acts, making false representations to Saudi Aramco and other customers concerning ARPIC's participation in the Joint Venture.  (Doc. 1 – Pgs. 27-28).  In Count III, ARTC alleged that SEI tortiously interfered with its contractual rights by causing DRG and its affiliates to breach the Sales Agreements and fail to pay outstanding commissions.  (Doc. 1 – Pgs. 29-30).  In Count IV, ARTC asserted an unjust enrichment claim against SEI.  (Doc. 1 – Pgs. 30-31).

**C.     The District Court's Dismissal of the Initial Complaint**

By Order dated September 14, 2022 (Doc. 38), the district court denied SEI's motion to dismiss the Initial Complaint without reaching the merits of the arguments presented because the motion was largely based on evidence beyond the pleading:

> Simply put, the Motion is so replete with references to evidence that this Court cannot consider, or that Defendant has not shown that this Court can consider, that it is impossible for the Court to address the merits of the arguments raised therein without converting the Motion into one for summary judgment, which the Court is not presently inclined to do. Accordingly, the Court has no choice but to deny the Motion without further analysis.

(Doc. 38 – Pg. 6).

Nevertheless, the district court *sua sponte* dismissed the Initial Complaint without prejudice, finding that it was "an impermissible shotgun pleading" because it failed to segregate each distinct act of interference into a separate cause of action. (Doc. 38 – Pg. 8) ("[T]he Complaint lumps each of these injuries, which appear to arise from distinct transactions and occurrences and rest on differing theories of liability, into a single count, making it nearly impossible for Defendant to respond to Count One.").

**D.      The First Amended Complaint**

On September 28, 2022, ARPIC and ARTC filed the FAC. (Doc. 39). Consistent with the district court's ruling, the FAC segregates each alleged act of interference into a separate cause of action. In the First Count, ARPIC alleges that SEI tortiously interfered with its contractual rights by diverting purchase orders issued under the CPA. (Doc. 39 – Pgs. 29-31). In the Second through Fifth Counts, ARPIC separately alleges that SEI tortiously interfered with its contractual rights by diverting each of the Saudi Power Plant, Hawiyah Reservoir, Tanajib Plant, and

Long-Term Service Contracts. (Doc. 39 – Pgs. 31-37). In the Sixth Count, ARPIC alleges that SEI tortiously interfered with its contractual rights by diverting other contracts and business opportunities within the Joint Venture's Scope of Business that have yet to be identified or uncovered in discovery. (Doc. 39 – Pgs. 38-40). In the Seventh Count, ARPIC alleges that SEI tortiously interfered with ARPIC's contractual rights by causing DRH to breach the non-compete provisions of the BVA. (Doc. 39 – Pgs. 40-42).

In the Eighth Count, ARPIC alleges that SEI engaged in unfair competition by falsely representing to Saudi Aramco and other customers of the Joint Venture that ARPIC remained actively involved with the Joint Venture. (Doc. 39 – Pg. 42-44). In the Ninth Count, ARTC alleges that SEI tortiously interfered with the Sales Agency Agreements by causing DRG and its affiliates to breach those agreements and refuse to pay commissions owed to ARTC. (Doc. 39 – Pg. 44-45). In the Tenth Count, ARTC alleged that SEI tortiously interfered with its rights under the Sales Agency Agreements by diverting sales, revenues, transactions, and purchase orders from the books of DRG and the Joint Venture to various Siemens subsidiaries to avoid paying commissions owed to ARTC under the Sales Agency Agreements. (Doc. 39 – Pg. 45-46). In the Eleventh Count, ARTC alleged that SEI was unjustly enriched because "it and/or entities it acquired" received and retained the benefit of revenues from the sale of DRG products, spare parts, and related service in Saudi

Arabia generated by ARTC without paying the required commissions to ARTC. (Doc. 39 – Pg. 46-47).

## E.     The District Court's Dismissal of the First Amended Complaint

By Order dated September 12, 2023, the district court dismissed the FAC in its entirety and closed the case.  (Doc. 62 – Pg. 8).

*ARPIC's Tortious Interference Claims (First through Seventh Counts).* The district court dismissed all seven of ARPIC's tortious interference claims (the First through Seventh Counts) because: (i) "Defendant allegedly had both a supervisory interest in how the Joint Venture was conducted and a financial interest in how the BVA was performed and, therefore, ARPIC has failed to allege that Defendant was a stranger to the business relationship"; and (ii) ARPIC failed to sufficiently allege that SEI's interference was purely malicious or that SEI engaged in improper means so as to fall within an exception to the qualified privilege to interfere.  (Doc. 62 – Pgs. 4-6).

*ARTC's Tortious Interference Claims (Ninth and Tenth Counts).*  The district court dismissed ARTC's tortious interference claims based on the same conclusions—that "[SEI] is not a stranger to the agreement and ARTC has not alleged pure malice or improper means."  (Doc. 62 – Pg. 7).

*ARPIC's Unfair Competition Claim (Eighth Count).*  Notwithstanding specific allegations concerning false misrepresentations made by SEI to Saudi

Aramco to continue to divert business belonging to the Joint Venture, the district court concluded that ARPIC's unfair competition could be dismissed because "the body of [the Eighth Count] consists of a paragraph stating various means of unfair competition and conclusory statements regarding Defendant's control over the Joint Venture and the pool of customers, leaving the Court unclear as to what claim is actually being alleged . . . ." (Doc. 62 – Pgs. 7-8). Ignoring the distinctly different roles performed by ARPIC and ARTC, as well as the indisputable fact that every company doing business in the Saudi oil and gas market is competing for the business of Saudi Aramco, the court also held that the claim could be dismissed because ARPIC's allegation that it and SEI compete for the same pool of customers was "contradicted" by the facts alleged in the FAC. (Doc. 62 – Pgs. 7-8) ("Plaintiff alleges that their sales agents assist companies in entering and doing business in Saudi Arabia, a far cry from Defendant's manufacture of gas turbines and compressors.") (internal citations omitted).

***ARTC's Unjust Enrichment Claim (Eleventh Count).*** The district court dismissed ARTC's unjust enrichment claim without even addressing the merits of SEI's arguments solely because ARTC used the "and/or" conjunction in framing the cause of action. (Doc. 62 – Pgs. 8-9) ("Based on the use of the 'and/or' conjunction, the Court is unclear if ARTC is alleging that Defendant directly benefitted from its actions or if it seeks to hold Defendant liable—directly or vicariously—for the

conduct of DRG.  Because it is unclear exactly what theory of liability ARTC is alleging, this Court would essentially be issuing an advisory opinion on the viability of claims that may or may not have been asserted.").

## STANDARD OF REVIEW

This Court reviews the granting of SEI's motion to dismiss *de novo*, and, in doing so, applies the same standards as the district court.  *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003); *Stephens v. Dep't of Health and Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990).

"The threshold sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low." *Ancata v. Prison Health Serv., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985) (citation omitted).  "[A] complaint must be liberally construed, assuming the facts alleged therein as true and drawing all reasonable inferences from those facts in plaintiff's favor." *U.S. Commodity Futures Exch. v. Vision Fin. Partners, LLC*, 190 F. Supp. 3d 1126, 1128 (S.D. Fla. 2016) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  At the pleading stage, a plaintiff need not have presented detailed factual allegations. *See Twombly*, 550 U.S. at 555.  The complaint need only contain sufficient facts to "state a claim to relief that is plausible on its face." *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

## SUMMARY OF THE ARGUMENT

The district court erred in dismissing each of Appellants' causes of action.

I.    The district court erred in dismissing ARPIC's tortious interference claims (the First through Seventh Counts).  SEI is a "stranger" to the BVA—and, therefore, had no privilege to interfere—because (i) it acquired the DRG subsidiary that was a party to the BVA *six years after* the BVA was entered, and (ii) contrary to the district court's findings, ARPIC did not allege that SEI has "a supervisory interest in the Joint Venture" or "a financial interest in how the BVA was performed" (Doc. 39 – Pgs. 14, 23), but rather that SEI interfered with ARPIC's rights under the BVA by diverting business *away* from the Joint Venture to itself.  *See* (Doc. 39 – Pgs. 3-4, 26).  Moreover, even if the district court were correct in its conclusion that SEI is not a "stranger" to the BVA, the FAC contains allegations sufficient to survive a motion to dismiss as to the applicability of the "pure malice" and "improper means" exceptions to the qualified privilege to interfere, including that SEI secretly transitioned business belonging to the Joint Venture to its own facility and made false representations to Saudi Aramco with the intent to injure ARPIC.  As this Court has made clear, questions concerning intent and improper means should be reserved

for the trier of fact.  *See Mfg. Rsch. Corp. v. Greenlee Tool Co.*, 693 F.2d 1037, 1040 (11th Cir. 1982).

II.     The district court committed the same errors in dismissing ARTC's tortious interference claims (the Ninth and Tenth Counts).  SEI is a "stranger" to the Sales Agency Agreements because it did not acquire the DRG subsidiary that was a party to the Sales Agency Agreements until *two decades after* the Agreements were executed and long after the sales for which ARTC is seeking commissions had been generated.  (Doc. 39 – Pgs. 28-29).  And even if the district court were correct in concluding that SEI is not a "stranger" to the Sales Agency Agreements, ARTC's allegations that SEI made false assurances about payment and altered the company books to conceal commissions owed are enough to sufficiently allege the "pure malice" and "improper means" exceptions, or, at the very least, raise questions of fact that cannot be resolved on a motion under Rule 12(b)(6).

III.    The district court erred in dismissing ARPIC's unfair competition claim (the Eighth Count).  There is nothing ambiguous about ARPIC's theory or the "pool of customers" for which ARPIC and SEI compete.  The FAC specifically and clearly alleges that SEI engaged in unfair competition by lying to Saudi Aramco—the only customer that matters in the Saudi oil and gas market—so that it could continue to divert Aramco's orders for equipment and service from the Joint Venture to itself.

IV.    The district court erred in dismissing ARTC's unjust enrichment claim (the Eleventh Count).  The court's refusal to analyze the substance or sufficiency of ARTC's allegations merely because ARTC used the "and/or" conjunction is irrational and unjustifiable considering that Rule 8(d)(2) expressly permits a party to advance alternate theories and Florida law provides that SEI can be liable under a theory of unjust enrichment for benefits conferred directly upon it or through the DRG subsidiaries it acquired.

## **ARGUMENT**

## I.    THE DISTRICT COURT ERRED IN DISMISSING ARPIC'S TORTIOUS INTERFERENCE CLAIMS.

The district court dismissed ARPIC's tortious interference claims (First through Seventh Counts) in their entirety based on two conclusions.  *First*, the district court held that SEI was not a stranger to the BVA because it "allegedly had a supervisory interest in how the Joint Venture was conducted and a financial interest in how the BVA was performed . . . ."  (Doc. 62 – Pg. 5).  *Second*, the district court held that ARPIC failed to allege facts sufficient to show that SEI's conduct fell within the "purely malicious" or "improper means" exceptions to the qualified privilege to interfere held by a party to a contract.  (Doc. 62 – Pgs. 5-6).  Both conclusions are erroneous.

## A.    SEI Is a "Stranger" to the BVA.

The district court's determination that SEI is not a stranger to the BVA ignores and conflates key factual allegations in the FAC.   First and foremost, the district court fails to acknowledge that, as alleged in the FAC, SEI did not acquire DRG and its subsidiaries until *six years after* the BVA was entered.   (Doc. 39 – Pgs. 14, 23). That fact alone warrants a finding that SEI is indeed in a stranger to the contract.

In *Hyatt Corp. v. Epoch-Florida Capital Hotel Partners, Ltd.*, No. 6:07-CV-1260-ORL-KRS, 2008 WL 490121, at *1 (M.D. Fla. Feb. 20, 2008), Florida Capital entered into a franchise agreement with AmeriSuites to operate a hotel.   Six years later, Hyatt purchased the AmeriSuites hotel brand and, in turn, ceased operating the AmeriSuites brand, re-branded some of the former Ameri-Suites hotels to the "Hyatt" brand, and refused to permit the conversion of Florida Capital's hotel to the "Hyatt" brand.   *See id.*

In response to a lawsuit initiated by Hyatt, Florida Capital filed a counterclaim for tortious interference, alleging that "Hyatt used its influence as the parent corporation to induce AmeriSuites to breach its franchise agreement" and that Hyatt's conduct was "willful, oppressive and malicious."   *Id.* at *2.   The district court denied Hyatt's motion to dismiss that claim, holding, in part, that Hyatt was a stranger to the franchise agreement because it did not own AmeriSuites at the inception of the agreement.   *Id.* at *4 ("Hyatt did not own AmeriSuites at the time

AmeriSuites entered into the franchise agreement with Florida Capital. Therefore, it was a 'stranger' to the contract at its inception."). The same rationale applies with equal, if not greater, force here.

Moreover, ARPIC does *not* allege or infer, as the district court erroneously concluded, that SEI had a "supervisory interest in how the Joint Venture was conducted" or "a financial interest in how the BVA was performed[.]" (Doc. 62 – Pg. 5). To the contrary, ARPIC's tortious interference claims (First through Sixth Counts) are premised entirely on allegations that SEI diverted contracts and opportunities *away* from the Joint Venture to itself after the acquisition was consummated. By way of example, but far from limitation, ARPIC alleges that SEI has:

- "been tortiously interfering with ARPIC's contractual rights by secretly transitioning the Joint Venture's operations to Siemen's own facility, and using the Joint Venture's product line and personnel, as well as ARPIC's confidential and proprietary information, to fulfill the very purchase orders that the Joint Venture was formed to fulfill," (Doc. 39 – Pg. 3) (FAC, ¶ 10);

- "repeatedly interfered with ARPIC's contractual rights by securing and fulfilling other extremely lucrative contracts and opportunities with Saudi Aramco that fall within the Joint Venture's Scope of Business and, but for Siemens Energy's interference, would have been awarded to and fulfilled by the Joint Venture," including the Saudi Power Plant, Hawiyah Reservoir, Tanajib Plant, and Long-Term Service Contracts, (Doc. 39 – Pgs. 3-4) (FAC, ¶¶ 11-12); and

- "been so successful in hijacking and exploiting contracts and opportunities that would otherwise have been awarded to and fulfilled by the Joint Venture that it just completed a massive expansion of the Siemens Facility to increase its local capabilities and better service Saudi Aramco." (Doc. 39 – Pg. 26) (FAC, ¶ 123).

Put more simply, ARPIC alleges that SEI completely abandoned the Joint Venture and stole everything of value belonging to it.

ARPIC also alternatively alleges—just as Florida Capital successfully did in stating a tortious interference claim against Hyatt—that SEI used its control over DRH to cause DRH to breach the BVA. (Doc. 39 – Pg. 41) (FAC, ¶ 207) ("[SEI] has intentionally and tortiously interfered with those rights by using its control over DRH to cause DRH to breach [the non-compete] provisions of the BVA and engage or participate in and/or fulfill business contracts and opportunities that compete directly with the Joint Venture."). In other words, ARPIC alleges that SEI had a financial interest in doing for itself the business that the Joint Venture was formed to do and ensuring that the BVA was *not* performed at all.

These allegations, which must be accepted as true, sufficiently establish that SEI was a stranger to the BVA. In fact, SEI itself insists that it has "*at most a peripheral connection to these contracts and the Plaintiffs*." (Doc. 40 – Pg. 3) (emphasis added). At the very least, they present factual issues concerning SEI's ties to the BVA and the Joint Venture that cannot be adjudicated on a motion to dismiss. *See Walter v. Jet Aviation Flight Servs., Inc.*, No. 9:16-CV-81238, 2016

WL 7116641, at *2 (S.D. Fla. Dec. 7, 2016) (noting that determination of whether a party is a stranger to a business relationship requires a "fact-specific" analysis and refusing to engage in such an analysis at the motion to dismiss stage).

By nevertheless pressing forward on the issue and arriving at an erroneous conclusion, the district court subjected ARPIC's tortious interference claims to the more rigorous standards applicable to the "purely malicious" and "improper means" exceptions to the qualified privilege rather the standard elements applicable to a third-party tortfeasor. *See Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 814 (Fla. 1994) ("The elements of tortious interference with a business relationship are '(1) the existence of a business relationship . . . [;] (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship.'") (internal citation omitted). There can be no dispute that the FAC sufficiently pleads each of those elements. Accordingly, the district court erred in dismissing ARPIC's tortious interference claims.

### B.    ARPIC Sufficiently Alleged that SEI Acted with Pure Malice and Employed Improper Means.

The district court's finding that ARPIC failed to sufficiently allege either exception to the qualified privilege is also plagued by grave errors. As a threshold matter, the law is clear that the issue of whether SEI "has gone beyond its limited privilege is generally a jury question." *Gulf Coast Turf & Tractor LLC v. Kubota*

*Tractor Corp.*, No. 8:17-cv-2787-T-24, 2019 WL 1227776, at *4 (M.D. Fla. Mar. 15, 2019); *see also Alticor v. UMG Recordings, Inc.*, No. 6:14-CV-542-ORL-37, 2015 WL 736346, at *3 (M.D. Fla. Feb. 20, 2015) ("[T]he propriety of methods used by a defendant to tortiously interfere with a plaintiff's contract rights is often resolved by a trier of fact on a developed record[.]"); *Burger King Corp. v. Ashland Equities, Inc.*, 161 F. Supp. 2d 1331, 1337-38 (S.D. Fla. 2001) (the "question of whether the interfering party has gone beyond its limited and qualified privilege" is "generally reserved for the trier of fact"). Put another way, "'when there is room for different views, the determination of whether the interference was improper or not is ordinarily left to the jury, to obtain its common feel for the state of community mores and for the manner in which they would operate upon the facts in question.'" *Mfg. Rsch. Corp.*, 693 F.2d at 1040 (quoting Restatement (Second) of Torts § 767 cmt. I). Thus, the district court should have refrained from making such a dispositive determination at the pleading stage.

The district court also erred by failing to consider the totality of ARPIC's allegations. "[P]arties are disqualified from asserting the privilege if they act maliciously or with conspiratorial motives, because the privilege does not encompass the purposeful causing of a breach of contract." *CSDS Aircraft Sales & Leasing, Inc. v. Lloyd Aereo Boliviano Airlines*, No. 09-CIV-22274, 2011 WL 1559823, at *5 (S.D. Fla. Apr. 22, 2011) (internal quotations omitted). "Malice may

be shown indirectly 'by proving a series of acts which, in their context or in light of the totality of the circumstances, are inconsistent with the premise of a reasonable man pursuing a lawful objective, but rather indicated a plan or course motivated by spite, ill-will or other bad motive.'" *Advantor Sys. Corp. v. DRS Tech. Servs, Inc.*, No. 6:14-CV-533-ORL-31DAB, 2014 WL 3747667, at \*3 (M.D. Fla. July 29, 2014) (quoting *Slip-N-Slide Records, Inc. v. TVT Records, LLC*, No. 05-21113-CIV, 2007 WL 3232274, at \*3 (S.D. Fla. Oct. 31, 2007)) (additional citations omitted).

"[E]ven when the defendant's motive is not purely malicious, a tortious interference claim may succeed if improper methods were used." *KMS Restaurant Corp. v. Wendy's International, Inc.*, 361 F.3d 1321, 1327 (11th Cir. 2004) (collecting Florida cases holding improper methods are sufficient). "Improper" means include, but are not limited to, "physical violence, misrepresentations, intimidation, conspiratorial conduct, illegal conduct or threats of illegal conduct." *Bluesky Greenland Env't Sols., LLC v. 21st Century Planet Fund, LLC*, 985 F. Supp. 2d 1356, 1367 (S.D. Fla. 2013) (citing *G.M. Brod. & Co. v. U.S. Home Corp.*, 759 F.2d 1526 (11th Cir. 1985)). "Ultimately, to determine whether interference is justified or privileged requires a commonsense consideration of whether the conduct was sanctioned by the rules of the game and what is right and just under the circumstances." *Id.* (internal citations and quotation marks omitted).

Here, the FAC specifically alleges SEI interfered with the BVA "with the intent to injure ARPIC." (Doc. 39 – Pgs. 30, 32, 33, 35, 37, 39, 41). That alone is sufficient to plead pure malice. *See Hyatt Corp.*, 2008 WL 490121, at *4 (holding that allegation that Hyatt interfered "with the intent to financially harm Florida Capital" was sufficient to plead "purely malicious" exception).

The FAC further alleges that SEI:

- "secretly transition[ed] the Joint Venture's operations to Siemens' own facility, and use[d] the Joint Venture's product line and personnel, as well as ARPIC's confidential and proprietary information, to fulfill the very purchase orders [under the CPA] that the Joint Venture was formed to fulfill," (Doc. 39 – Pg. 3) (FAC, ¶ 10);

- "repeatedly engaged in separate and distinct acts of tortious interference . . . by using the Joint Venture's product line and personnel, as well as ARPIC's proprietary information and trade secrets, to secure and fulfill contracts and opportunities that fall within the Joint Venture's Scope of Business," including the Saudi Power Plant, Hawiyah Reservoir, Tanajib Plant and Long-Term Service Contracts, (Doc. 39 – Pgs. 24-26) (FAC, ¶¶ 116-122);

- "falsely represent[ed] to Saudi Aramco that ARPIC has been actively involved in the Joint Venture" so that it could continue to diver the purchase orders issued under the CPA and secure and fulfill the foregoing contracts, (Doc. 39 – Pg. 27) (FAC, ¶ 127);

- purposely excluded ARPIC from all aspects of the Joint Venture and unilaterally abandoned the JV Facility, (Doc. 39 – Pgs. 27-28) (FAC, ¶¶ 128 and 129); and

- engaged in the foregoing acts "in bad faith, reckless disregard for the rights of ARPIC, [and] retaliation for ARPIC's alleged breaches of the BVA and failure to pay its proportionate share of the capital contributions for the JV Facility" and to deny ARPIC of its proportionate share of the benefits of the contracts it has stolen. (Doc. 39 – Pgs. 30, 32, 34, 37, 39) (FAC, ¶¶ 146-147, 155-156, 166-167, 186-187, 198-199).

These allegations singularly and collectively demonstrate that SEI's acts were malicious, fueled by ill motives, undertaken through improper and unfair means, and violated the "rules of the game." *CSDS Aircraft*, 2011 WL 1559823, at *5; *Bluesky*, 985 F. Supp. 2d at 1367. In fact, they exceed far more generalized allegations found to be sufficient in similar matters. *See, e.g.*, *Whetstone Indus., Inc. v. Yowie Grp. Ltd.*, No. 3:17-CV-1286-J-20PDB, 2019 WL 13177819, at *3 (M.D. Fla. Aug. 15, 2019) (plaintiff's allegations that parent corporation "acted out of malice, and used dishonest, unfair or improper means" when it interfered with plaintiff's contract with subsidiary were sufficient to defeat motion to dismiss); *Bray & Gillespie Management LLC v. Lexington Ins. Co.*, 527 F. Supp. 2d 1355, 1368 (M.D. Fla. 2007) (allegations that the controlling owners of a subsidiary with which plaintiff had contracted "acted with ulterior motives for their own benefit" were sufficient to survive motion to dismiss). At a minimum, they present "room for different views" as to whether the interference was purely malicious or improper, *Mfg. Rsch. Corp.*, 693 F.2d at 1040, and create factual issues that cannot be resolved on SEI's motion

to dismiss.  For these reasons as well, the district court erred in dismissing ARPIC's tortious interference claims.

## II. THE DISTRICT COURT ERRED IN DISMISSING ARTC'S TORTIOUS INTERFERENCE CLAIMS.

The district court's dismissal of ARTC's tortious interference claims (the Ninth and Tenth Counts) suffers from the same flaws.

### A. SEI Is a "Stranger" to the Sales Agency Agreements.

The district court concluded that SEI "was not a stranger to the relationship between ARTC and DRG" based solely on SEI's "ownership and alleged control over DRG." (Doc. 62 – Pg. 7).  That is not a sufficient basis to make such a pivotal finding.  As the district court itself acknowledged, "the existence of a parent-subsidiary relationship alone does not preclude a claim for tortious interference under Florida law." (Doc. 62 – Pgs. 4-5) (citing *Hyatt Corp.*, 2008 WL 490121, at *4).

The district court's finding is also belied by the totality of ARTC's allegations and SEI's own statements.  ARTC alleges that SEI did not acquire DRG until roughly *twenty years after* the Sales Agency Agreements were executed.  *See Hyatt Corp.*, 2008 WL 490121, at *4 (holding that a six-year separation between inception of subject agreement and parent's acquisition of subsidiary rendered parent a "stranger" to the agreement).  In fact, by early 2009, or more than six years before the acquisition was finalized, ARTC had already "effectuat[ed] large-scale sales of

DRG products" in Saudi Arabia, "buil[t] a substantial presence for DRG in the Saudi market," forged the business relationship between DRG and Saudi Aramco, secured the CPA, and generated millions of dollars in commissions that were never paid and account for the lion's share of ARTC's damages. (Doc. 39 – Pg. 8). Meanwhile, SEI insists that *DRG* terminated the Sales Agency Agreements immediately after the acquisition, (Doc. 17 – Pg. 8), and that it has "*at most a peripheral connection to these contracts and the Plaintiffs*." (Doc. 40 - Pg. 3) (emphasis added).

The FAC also firmly establishes that SEI had no financial or other meaningful interest in the performance of the Sales Agency Agreements. For example, ARTC specifically alleges that "[b]y the time the acquisition was completed in mid-2015, ARTC became expendable to Siemens and DRG because Siemens already had a long-standing sales agency relationship with Juffali, which could fill ARTC's role in effectuating the sale of DRG products in Saudi Arabia and other parts of the Middle East." (Doc. 39 – Pg. 23). Thus, SEI's sole involvement with respect to the Sales Agency Agreements was falsely assuring ARTC that outstanding commissions would be paid, corrupting the company books to conceal sales for which commissions would be owed, and causing DRH to breach its contractual obligation to pay ARTC the monies to which it is entitled. (Doc. 39 – Pgs. 29, 44, 46).

Viewed in isolation or in the aggregate, these allegations demonstrate that SEI was a "stranger" to the Sales Agency Agreements, or, at a minimum, create issues

of fact that cannot be resolved on a Rule 12(b)(6) motion.  Accordingly, the district court erred in dismissing ARTC's tortious interference claims.

### B. ARTC Sufficiently Alleged that SEI Acted with Pure Malice and Employed Improper Means.

The district court's finding that "ARTC has not alleged pure malice or improper means" also cannot withstand this Court's scrutiny.  (Doc. 62 – Pg. 7).  *First*, the allegations in the Ninth and Tenth Counts that SEI "engaged in such misconduct by using fraudulent and illegal means and in bad faith for the purpose of causing harm or injury to ARTC," (Doc. 39 – Pg. 45), adequately plead pure malice.  *See Hyatt Corp.*, 2008 WL 490121, at *4.

*Second*, while the district court found that "ARTC alleges that [SEI] acted with the intent to maximize its profits at ARTC's expense," (Doc. 62 – Pg. 7), the FAC makes clear that SEI had nothing to gain via the Sales Agency Agreements.  As previously noted, DRG purported to terminate the Sales Agency Agreements and SEI began using another sales agency to solicit sales of SEI and DRG products and services in Saudi Arabia immediately after the acquisition was completed.  (Doc. 39 – Pg. 23).

*Third*, the district court acknowledged that SEI's assurances that commissions would be paid "might support a claim of improper means," but nevertheless completely disregarded that allegation on the basis that ARTC did not specifically allege that those assurances were false at the time they were made.  (Doc. 62 – Pg.

7). That rationale is legally and factually inaccurate. "Claims for tortious interference do not have to be pled with specificity, all that is required is a short plain statement." *Kronotex USA, LLC v. Hodges*, No. 07-CIV-21939, 2008 WL 11406179, at *4 (S.D. Fla. Apr. 25, 2008) (citing *Bray & Gillespie Management*, 527 F. Supp. 2d at 1368). Moreover, the facts alleged—including that the assurances were "false" and made to induce ARTC to forego efforts to collect the outstanding commissions and that those commissions were never paid, *see* (Doc. 39 – Pgs. 14, 44-45)—sufficiently establish that SEI's representations concerning payment were false at the time they were made.

*Fourth*, the FAC contains other substantive allegations that evidence SEI's utilization of improper means. Most notably, ARTC alleges that SEI "divert[ed] sales, revenues, transactions, and purchases orders from the books of DRG and the Joint Venture to the books of various Siemens' subsidiaries or joint ventures to avoid paying commissions owed to ARTC under the Sales Agency Agreements." (Doc. 39 – Pg. 46). Such purposeful and deceptive conduct clearly violates the "rules of the game." *Bluesky*, 985 F. Supp. 2d at 1367. For these reasons as well, the district court erred in dismissing ARTC's tortious interference claims.

## III. THE DISTRICT COURT ERRED IN DISMISSING ARPIC'S UNFAIR COMPETITION CLAIM.

The district court dismissed ARPIC's unfair competition claim (the Eighth Count) on two grounds. *First*, the district court found that the cause of action lacked clarity:

> In Count Eight, ARPIC alleges a claim for common law unfair competition. Although the heading of the claim generally references "False Misrepresentations," the body of the count consists of a paragraph stating various means of unfair competition and conclusory statements regarding Defendant's control over the Joint Venture and the pool of customers, leaving the Court unclear as to what claim is actually being alleged in Count Eight. On this basis alone, the claim can be dismissed.

(Doc. 62 – Pgs. 7-8). *Second*, the district court determined that ARPIC's contention that SEI and ARPIC compete for the "same pool of customers" is "contradicted by the facts alleged in the First Amended Complaint." (Doc. 62 – Pg. 8) ("Plaintiff alleges that their sales agents assist companies in entering and doing business in Saudi Arabia, a far cry from Defendant's manufacture of gas turbines and compressors."). Both grounds are untenable.

### A. ARPIC's Unfair Competition Claim Is Clear and Definitive.

The substance of the Eighth Count and the basis of ARPIC's unfair competition claim could not be clearer. Consistent with the "False Misrepresentations" heading, ARPIC specifically and definitively alleges that SEI

made false representations to Saudi Aramco about ARPIC's involvement in the Joint Venture so that it could continue to divert Aramco's business for its sole benefit:

- As set forth in the CPA and the Local Content Accord and contemplated by the BVA, Saudi Aramco agreed to have the Joint Venture fulfill purchase orders issued under the CPA based on its understanding that ARPIC holds a substantial ownership interest and has been able to actively participate in the Joint Venture's operations.

- Siemens Energy has stripped ARPIC of its operational and governance role in connection with the Joint Venture and has effectively excluded ARPIC from the Joint Venture.

- Siemens Energy, however, has falsely represented to Saudi Aramco and other customers of the Joint Venture that ARPIC has remained actively involved in the Joint Venture.

- By virtue of these misrepresentations, Siemens Energy has been able to continue the lucrative business relationship with Saudi Aramco, divert contracts that would have been fulfilled by the Joint Venture, including, but not limited to purchase orders issued under the CPA and other contracts referenced herein, and deny ARPIC its proportionate share of the related benefits.

- Siemens Energy's false and deceptive representations were intentional, unfair, unconscionable, and made in bad faith.

(Doc. 39 – Pg. 43).

These allegations sufficiently state a claim within the expansive scope of unfair competition under Florida law. *See Ameritox, Ltd. v. Milennium Lab'ys, Inc.*, No. 8:11–cv–775–T–24–TBM, 2012 WL 33155, at *4 (M.D. Fla. Jan. 6, 2012)

(unfair competition is an "umbrella for all statutory and non-statutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters") (internal quotation and citations omitted); *Remember Everyone Deployed Inc. v. AC2T Inc.*, No. 20-CV-62355, 2021 WL 1200421, at *9 (S.D. Fla. Mar. 8, 2021) ("'Under Florida's common law, [u]nfair competition is a doctrine grounded in fairness, decency and common honesty.'") (quoting *Glob. Tech Led, LLC v. Hilumz Int'l Corp.*, 2017 WL 588669, at *7 (M.D. Fla. Feb. 14, 2017)) (internal quotation omitted), *report and recommendation adopted*, 2021 WL 1198327 (S.D. Fla. Mar. 29, 2021).

Like the plaintiff in *Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 1314, 1325 (M.D. Fla. 2007), where the district court denied cross motions to dismiss unfair competition claims, ARPIC has detailed the alleged misrepresentations made to Saudi Aramco, the falsity of the statements, and the customer confusion resulting therefrom. ARPIC's allegations also adequately assert that SEI has misappropriated a business relationship forged by ARPIC and engaged in fraudulent conduct to conceal the truth from ARPIC's principal customer. *See Sentco, Inc. v. McCulloh*, 68 So.2d 577, 580 (Fla. 1953) ("[A] person cannot use his own name if it is done with the fraudulent intent of appropriating the good will of a business established and built up by another person of the same name."). Therefore,

ARPIC clearly and definitively states a cause of action for unfair competition, and the district court erred in dismissing the Eighth Count.

## B.     SEI and ARPIC Compete for the Same Customer.

The district court's finding concerning the "pool of customers" is equally misguided.  As a preliminary matter, the district court confused the distinct roles performed by ARTC and ARPIC.  It is ARTC that serves as a sales agent for foreign entities seeking to promote their products and establish sales in Saudi Arabia.  (Doc. 39 – Pg. 6).  Conversely, ARPIC engages in joint ventures formed with foreign entities to manufacture and service equipment for oil and gas applications, just as it did in this instance.  (Doc. 39 – Pg. 20).

Moreover, the FAC firmly establishes that Al Rushaid has been a key player in Saudi Arabia's oil and gas industry for decades, that ARPIC and SEI (and everyone else in that market) are effectively competing for business from a single customer—Saudi Aramco, and that Saudi Aramco was Al Rushaid's customer long before SEI's acquisition of DRG and entry into the Saudi market was even contemplated.  (Doc. 39 – Pgs. 6-7).

ARPIC has therefore demonstrated enough of a similarity in business with SEI to survive a motion to dismiss.  *See*, *e.g.*, *Thermolife Int'l, LLC v. Vital Pharms, Inc.*, No. 19-CV-61380, 2020 WL 6781749, at *2 (S.D. Fla. Nov. 18, 2020)

("competition" requires "only a showing of a similarity in business, and not as narrow as a showing of direct competition").

## IV. THE DISTRICT COURT ERRED IN DISMISSING ARTC'S UNJUST ENRICHMENT CLAIM.

The district court did not address the substance of ARTC's unjust enrichment claim (Eleventh Count) or the merits of SEI's arguments due to an alleged lack of clarity and, more particularly, ARTC's use of the "and/or" conjunction:

> Defendant argues that ARTC has failed to allege a direct benefit and that the claim is barred by the existence of a written agreement governing the relationship. However, the Court is unable to address the merits of Defendant's arguments because it is entirely unclear what claim ARTC is attempting to allege. In Count Eleven, ARTC alleges it conferred a direct benefit on Defendant "and/or the entities it acquired[.]" Based on ARTC's use of the conjunction "and/or" conjunction, the Court is unclear if ARTC is alleging that Defendant directly benefited from its actions or if it seeks to hold Defendant liable—directly or vicariously—for the conduct of DRG. Because it is unclear exactly what theory of liability ARTC is alleging, this Court would essentially be issuing an advisory opinion on the viability of claims that may or may not have been asserted. Accordingly, Count Eleven will be dismissed for failure to comply with the minimum pleading standards without further analysis.

(Doc. 62 – Pgs. 8-9).

The district court erred by refusing to analyze the claim on this basis. The use of the "and/or" conjunction was appropriate because Florida law provides that an unjust enrichment claim may be based on theories of direct and vicarious liability.

*See Williams v. Wells Fargo Bank, N.A.*, No. 11-CIV-21233, 2011 WL 4901346, at *5 (S.D. Fla. Oct. 14, 2011) ("It would not serve the principles of justice and equity to preclude an unjust enrichment claim merely because the 'benefit' passed through an intermediary before being conferred on a defendant."); *Wilson v. EverBank, N.A.*, 77 F. Supp. 3d 1202, 1236-37 (S.D. Fla. 2015) (denying motion to dismiss where "the plaintiff allege[d] conferral of a benefit on a defendant through an intermediary" because "'[w]hether [Defendants] did or did not receive a direct benefit from Plaintiff [under these circumstances] is a question of fact that cannot be resolved at the motion to dismiss stage'") (quoting *Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1229 (S.D. Fla. 2009)). Moreover, it is permissible to plead theories in the alternative. *See* F.R.C.P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient"); *Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1175 (11th Cir. 2014) ("It is a well-settled rule of federal procedure that plaintiffs may assert alternative and contradictory theories of liability").

It was therefore proper for ARTC to allege that SEI received benefits bestowed upon it "and/or" entities it acquired. (Doc. 39 – Pg. 47) ("ARTC alleges that Siemens Energy has been unjustly enriched because it and/or entities it acquired,

received and retained the benefit of the revenues from the sale of DRG products, and related service in Saudi Arabia generated by ARTC without paying ARTC the substantial commissions owed for those sales.").

Had the district court analyzed ARTC's claim, as it should have, it would have been apparent that there is no merit to SEI's arguments for dismissal. *First*, ARTC identifies the direct benefit that SEI is alleged to have received—the revenues flowing from the sale of equipment and services originated by ARTC. (Doc. 39 – Pg. 47).

*Second*, "whether a benefit was actually conferred is a factual question that cannot be resolved on a motion to dismiss." *Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273, 1279 (S.D. Fla. 2009).

*Third*, while SEI contended that ARTC is barred from pursuing an unjust enrichment claim because the Sales Agency Agreements govern the payment of commissions, (Doc. 40 - Pg. 21), the Sales Agency Agreements are between ARTC and various DRG entities, not SEI. *See Wilson*, 77 F. Supp. 3d at 1236 (denying motion to dismiss unjust enrichment claim because defendants were not parties to agreements); *Kowalski v. Jackson Nat. Life Ins. Co.*, 981 F. Supp. 2d 1309, 1319 (S.D. Fla. 2013) (equitable principles did not preclude unjust enrichment claim against non-party to governing contract); *Tracfone Wireless, Inc. v. Access Telecom, Inc.*, 642 F. Supp. 2d 1354, 1365-66 (S.D. Fla. 2009) (denying motion to dismiss

unjust enrichment claim where "reasonable inferences drawn from the Complaint demonstrate there may be inadequate remedy at law as to some of Defendant's alleged misconduct"). Accordingly, ARTC adequately alleged a claim for unjust enrichment, and the district court erred in dismissing the Eleventh Count.

## CONCLUSION

For the foregoing reasons, this Court should reverse the order of the district court granting SEI's motion to dismiss the FAC, reinstate the FAC, and remand the action for further proceedings.

Dated: December 15, 2023

Respectfully submitted,

By: */s/ Ronald Edwards Jr.*

Ronald Edwards, Jr.
LOWNDES, DROSDICK, DOSTER
KANTOR & REED, P.A.
215 North Eola Drive, P.O. Box 2809
Orlando, Florida 32802
Tel.: (407) 843-4600
Ronny.EdwardsJr@lowndes-law.com

*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE

1.     This document complies with the type-volume limitations set forth in Fed. R. App. P. 32(a)(7)(B) because it contains 9,344 words, not counting the parts of the brief excluded by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated:  December 15, 2023

Respectfully submitted,

By:  */s/ Ronald Edwards Jr.*

Ronald Edwards, Jr.
LOWNDES, DROSDICK, DOSTER
KANTOR & REED, P.A.
215 North Eola Drive, P.O. Box 2809
Orlando, Florida 32802
Tel.: (407) 843-4600
Ronny.EdwardsJr@lowndes-law.com

*Counsel for Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that, on December 15, 2023, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit using the Court's CM/ECF system. All participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

Dated: December 15, 2023

Respectfully submitted,

By: */s/ Ronald Edwards Jr.*

Ronald Edwards, Jr.
LOWNDES, DROSDICK, DOSTER
KANTOR & REED, P.A.
215 North Eola Drive, P.O. Box 2809
Orlando, Florida 32802
Tel.: (407) 843-4600
Ronny.EdwardsJr@lowndes-law.com

*Counsel for Appellants*