# No. 23-13297-D

# In the United States Court of Appeals
# for the Eleventh Circuit

———————

AL RUSHAID PETROLEUM INVESTMENT COMPANY
and AL RUSHAID TRADING COMPANY

*Appellants,*

v.

SIEMENS ENERGY, INC.

*Appellee.*

———————

On Appeal from the United States District Court
for the Middle District of Florida

———————

**ANSWER BRIEF OF APPELLEE SIEMENS ENERGY, INC.**

———————

Brendan D. Cook
Courtney Giles
BAKER & McKENZIE LLP
800 Capitol Street, Suite 2100
Houston, Texas 77002
Telephone: (713) 427-5000

Jodi A. Avila
BAKER & McKENZIE LLP
1111 Brickell Avenue, Suite 1700
Miami, Florida 33131
Telephone: (305) 789-8900

*Counsel for Appellee*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Defendant/Appellee Siemens Energy, Inc. hereby identifies in alphabetical order the following trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party, as follows:

Al Rushaid Petroleum Investment Company (Plaintiff-Appellant)

Al Rushaid Trading Company (Plaintiff-Appellant)

Avila, Jodi A. (Counsel for Defendant-Appellee)

Baker & McKenzie LLP (Counsel for Defendant-Appellee)

Berger, Hon. Wendy W. (United States District Court Judge)

Calcagni & Kanefsky LLP (Counsel for Plaintiffs-Appellants)

Cook, Brendan D. (Counsel for Defendant-Appellee)

Edwards, Jr., Ronald D. (Counsel for Plaintiffs-Appellants)

Giles, Courtney E. (Counsel for Defendant-Appellee)

Kanefsky, Eric T. (Counsel for Plaintiffs-Appellants)

Kidd, Hon. Embry J. (United States Magistrate Judge)

LeMay, Taylor J. (Counsel for Defendant-Appellee)

Lowndes, Drosdick, Doster, Kantor & Reed, P.A. (Counsel for Plaintiffs-
Appellants)

Musiakiewicz, Kevin J. (Counsel for Plaintiffs-Appellants)

Roppolo, Jr., William V. (Counsel for Defendant-Appellee)

Siemens Energy AG (Corporate Parent of Defendant-Appellee)

Siemens Energy Global GmbH & Co. KG (Corporate Parent of Defendant-
Appellee)

Siemens Energy, Inc. (Defendant-Appellee)

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Defendant/Appellee Siemens Energy, Inc. is wholly owned by Siemens Energy Global GmbH & Co. KG, which is wholly owned by Siemens Energy AG ("SMEGF"). Siemens Energy AG is a publicly listed German company that trades on the Frankfurt stock exchange.

*/s/ Brendan D. Cook*
Brendan D. Cook

# STATEMENT REGARDING ORAL ARGUMENT

The appellate record is clear and not complex or lengthy. Moreover, the order dismissing Appellants' claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted is complete, well-reasoned, and supported by law. While this case presents questions of law for this Court's consideration, those questions of law are not novel, as Florida law is clear that when allegations, as pleaded, show that a party had both a supervisory interest in how the business was conducted and a financial interest in how the relevant contracts were performed, then that party cannot be liable for tortious interference absent pure malice or improper means. Defendant/Appellee Siemens Energy, Inc. ("Siemens Energy") does not believe that oral argument will substantially assist the Court in understanding the facts or resolving the issues in this appeal. However, if the Court sets this appeal for oral argument, Siemens Energy respectfully requests to participate.

# TABLE OF CONTENTS

**Page**

**CERTIFICATE OF INTERESTED PERSONS** ............................................... **C-1**

**CORPORATE DISCLOSURE STATEMENT** .............................................. **C-2**

**STATEMENT REGARDING ORAL ARGUMENT** ........................................ **i**

**TABLE OF CONTENTS** ....................................................................... **iii**

**TABLE OF AUTHORITIES** .................................................................. **iv**

**STATEMENT OF THE ISSUES** ..............................................................**1**

**STATEMENT OF THE CASE** .................................................................**2**

**I.     Statement of Relevant Facts** .....................................................**2**

      **A.     Due to Prior Operating Restrictions in Saudi Arabia, Al Rushaid Served as Dresser-Rand's Sales Agent in the Country** ....................**2**

      **B.     Al Rushaid Fails to Perform Under the Joint Venture and Related Contracts** ...................................................................**4**

      **C.     Siemens Energy's Parent Acquires Dresser-Rand, Thereby Acquiring the Relevant Contracts in this Case** .................................**5**

**II.    Relevant Procedural History Leading Up to this Case** .............................**7**

**III.   Course of Proceedings and Disposition in the District Court** ...................**8**

**STANDARD OF REVIEW** ....................................................................**11**

**SUMMARY OF THE ARGUMENT** ..........................................................**12**

**ARGUMENT AND CITATIONS OF AUTHORITY** .......................................**14**

**I.     Appellants' Amended Complaint Affirmatively Pleads that Appellants Did *Not* Interfere with the BVA** ....................................................**14**

A.      Siemens Energy Is Not a "Stranger" to the BVA............................15

B.      ARPIC Did Not Sufficiently Allege that Siemens Energy Used "Improper Means" to Interfere with the BVA............................222

II.    The Amended Complaint Fails to State a Claim for Tortious Interference with the Sales Agreements ......................................27

A.      Siemens Energy Is Not a "Stranger" to the Sales Agreements.....28

B.      ARTC Failed to Allege Siemens Energy Acted with "Improper Means" to Interfere with the Sales Agreements............................30

III.   The District Court Properly Dismissed ARPIC's Unfair Competition Claim ..............................................................................................31

IV.   The District Court Did Not Err in Dismissing ARTC's Unjust Enrichment Claim for Failure to State a Claim ......................................37

CONCLUSION................................................................................................40

CERTIFICATE OF COMPLIANCE ..............................................................42

CERTIFICATE OF SERVICE ........................................................................43

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACG S. Ins. Agency, Ltd. Liab. Co. v. Safeco Ins., Co.*,
No. 8:19-cv-528-T-36AAS, 2019 U.S. Dist. LEXIS 229659 (M.D.
Fla. Dec. 16, 2019).................................................................................31

*Allegiance Healthcare Corp. v. Coleman*,
232 F. Supp. 2d 1329 (S.D. Fla. 2002)..................................................33

*Alticor Inc. v. UMG Recordings, Inc.*,
No. 6:14-cv-542-Orl-37DAB, 2015 U.S. Dist. LEXIS 20536 (M.D.
Fla. Feb. 20, 2015) ...............................................................17, 24 26, 27

*Auto-Owners Ins. Co. v. Ace Elec. Serv.*,
648 F. Supp. 2d 1371 (M.D. Fla. 2009).................................................11

*Babson Bros. Co. v. Allison*,
337 So. 2d 848 (Fla. 1st DCA 1976) ......................................................18

*Bluesky Greenland Env't Sols., LLC v. 21st Century Planet Fund,
LLC*,
985 F. Supp. 2d 1356 (S.D. Fla. 2013)..................................................24

*Bridge Fin., Inc. v. J. Fischer & Assocs.*,
310 So. 3d 45 (Fla. 4th DCA 2020).................................................13, 19

*Davila v. Delta Air Lines, Inc.*,
326 F.3d 1183 (11th Cir. 2003) ..............................................................11

*Duty Free Ams., Inc. v. Estee Lauder Cos.*,
797 F.3d 1248 (11th Cir. 2015) .......................................................23, 25

*Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*,
1 So. 3d 400 (Fla. 3d DCA 2009).........................................................37

*Font & Nelson, PLLC v. Path Med., LLC*,
317 So. 3d 134 (Fla. 4th DCA 2021)......................................................16

*Gunder's Auto Center v. State Farm Auto Ins. Co.*,
   422 F. App'x 819 (11th Cir. 2011) ....................................................16

*Hyatt Corporation v. Epoch-Florida Capital Hotel Partners, Ltd.*,
   No. 6:07-cv-1260-Orl-KRS, 2008 U.S. Dist. LEXIS 12693 (M.D.
   Fla. Feb. 20, 2008) ........................................................................20

*Johnson Enters. of Jacksonville v. Fpl Grp.*,
   162 F.3d 1290 (11th Cir. 1998) ...............................................18, 27

*King Ranch, Inc. v. King Ranch Contractors, LLC*,
   No. 6:12-cv-597-Orl-37KRS, 2013 U.S. Dist. LEXIS 76777 (M.D.
   Fla. Jan. 29, 2013)...........................................................................36

*M.G.B. Homes, Inc. v. Ameron Homes, Inc.*,
   903 F.2d 1486 (11th Cir. 1990) .......................................................31

*Omnipol, A.S. v. Multinational Def. Servs., Ltd. Liab. Co.*,
   32 F.4th 1298 (11th Cir. 2022) ..................................................26, 30

*Palm Beach County Health Care Dist. v. Prof'l Med. Educ., Inc.*,
   13 So. 3d 1090 (Fla. 4th DCA 2009)..........................................*passim*

*Pedro v. Equifax, Inc.*,
   868 F.3d 1275 (11th Cir. 2017) .......................................................11

*Romika-USA, Inc. v. HSBC Bank USA, N.A.*,
   514 F. Supp. 2d 1334 (S.D. Fla. 2007).............................................23

*Samara v. Taylor*,
   38 F.4th 141 (11th Cir. 2022) ............................................................7

*Shenzhen Kinwong Elec. Co. v. Kukreja*,
   No. 18-61550-CIV, 2021 U.S. Dist. LEXIS 236107 (S.D. Fla. Dec.
   8, 2021) ...........................................................................................25

*Skytruck Company v. Sikorsky Aircraft Corporation*,
   Case No. 2:09-CV-267-FtM-36SPC, 2011 U.S. Dist. LEXIS
   165277 (M.D. Fla. Mar. 16, 2011) .......................................19, 28, 29

*Smith v. Ocean State Bank*,
   335 So. 2d, 641 (Fla. 1st DCA 1976) ...............................................16

*Third Party Verification, Inc. v. Signaturelink, Inc.*,
    492 F. Supp. 2d 1314 (M.D. Fla. 2007).......................................................31, 34

*ULQ, LLC v. Meder*,
    666 S.E.2d 713 (Ga. Ct. App. 2008)...........................................................19, 20

*Volvo Aero Leasing, Ltd. Liab. Co. v. VAS Aero Servs., Ltd. Liab. Co.*,
    268 So. 3d 785 (Fla. 4th DCA 2019)....................................................18, 19, 22

*Wackenhut Corp. v. Maimone*,
    389 So. 2d 656 (Fla. 4th DCA 1980)................................................................25

*Weiland v. Palm Beach Cnty. Sheriff's Office*,
    792 F.3d 1313 (11th Cir. 2015) .......................................................................15

*Wilson v. Everbank, N.A.*,
    77 F. Supp. 3d 1202 (S.D. Fla. 2015).........................................................38, 40

**Other Authorities**

Eleventh Circuit Rule 26.1-1 ......................................................................C-1

Fed. R. App. P. 26.1 ....................................................................................C-1

Fed. R. App. P. 32(a)(7).................................................................................42

Fed. R. App. P. 32(f)......................................................................................42

Fed. R. Civ. P. 9(b) ..................................................................................26, 30

Fed. R. Civ. P. 12(b)(6)............................................................................*passim*

# <u>STATEMENT OF THE ISSUES</u>

1.     Whether Al Rushaid failed to state claims for tortious interference by affirmatively pleading that Siemens Energy was *not* a stranger to the contracts at issue and/or by alleging facts demonstrating that Siemens Energy acted without pure malice and did not employ improper means.

2.      Whether ARPIC failed to state a claim for unfair competition because the claim is supported only by conclusory statements.

3.     Whether ARPIC failed to state a claim for unfair competition because the amended complaint pleads that (1) ARPIC does not manufacture or service gas turbines and compressors like Siemens Energy, and (2) ARPIC instead only assists other businesses with conducting business in Saudi Arabia.

4.     Whether ARTC failed to state a claim for unjust enrichment because it failed to identify which entity ARTC purportedly conferred direct benefit to and thereby failed to state the basis on which Siemens Energy may be liable under a theory of unjust enrichment.

5.     Whether ARTC's unjust enrichment claim may alternatively be dismissed because such claim is not available where a written agreement governs ARTC's claims.

## **STATEMENT OF THE CASE**

## I. STATEMENT OF RELEVANT FACTS

The claims in this case relate to a business relationship formed over thirty years ago and disputes that have arisen between joint venture partners Al Rushaid Petroleum Investment Company ("ARPIC") and Dresser-Rand B.V. ("DRBV"). While Defendant/Appellee Siemens Energy, Inc. ("Siemens Energy") was not historically involved in this business relationship, it has become a target of Appellants' attacks since Dresser-Rand Group, Inc. ("DRG") was acquired in 2015. This case is Appellants' sixth and latest attempt to bring claims related to the joint venture against various Siemens and Dresser-Rand entities, including a parallel pending arbitration proceeding against ARPIC's joint venture partner, DRBV, that advances nearly identical claims asserted in this case.

### A. Due to Prior Operating Restrictions in Saudi Arabia, Al Rushaid Served as Dresser-Rand's Sales Agent in the Country

Plaintiffs/Appellants ARPIC and Al Rushaid Trading Company ("ARTC", and together with ARPIC, "Appellants" or "Al Rushaid") are Saudi Arabian companies. As alleged by Appellants in the amended complaint, due to general restrictions on doing business in Saudi Arabia prior to mid-2016, Al Rushaid would serve as a required "Saudi partner" to foreign companies so those companies could "sell or distribute their products to Saudi customers, or to manufacture and/or service products in Saudi Arabia." (Doc 39 – Pg 6.)

Therefore, approximately thirty years ago, a DRG affiliate, Dresser-Rand International B.V. ("DRIBV") and ARTC entered into a Sales Representation Agreement, under which ARTC agreed to assist with the sale of specific Dresser-Rand Company products in Saudi Arabia for a commission.[1] (*See* Doc 39 – Pgs 7-8.) These products included compressors, steam turbine products, and rotating equipment for the oil and gas industry. (*See* Doc 39 – Pgs 10, 22.)

Around this same time, DRIBV and ARTC also entered into an Aftermarket Sales Representation Agreement, under which ARTC would serve as Dresser-Rand Company's local sales agent in Saudi Arabia for certain aftermarket products and services. (Doc 39 – Pg 8.) The Sales Representation Agreement and Aftermarket Sales Representation Agreement are collectively referred to herein as the "Sales Agreements." The key provisions of the Sales Agreements are almost identical. (Doc 39 – Pg 8.) Under both agreements, ARTC was to promote the sale of DRG products and services, negotiate sales, and assist in collecting accounts in Saudi Arabia. (Doc 39 – Pg 8.) In turn, ARTC would be paid a commission on the sale of DRG products. (Doc 39 – Pg 8.) ARTC alleges that "[a]s of early 2009, DRG owed ARTC millions in commissions" pursuant to the Sales Agreements. (Doc 39 – Pg 8.)

---

[1] The Sales Agreements covered products and services manufactured by Dresser-Rand Company and certain of its affiliates. Appellants plead that DRG has since assumed the rights and obligations under the Sales Representation Agreement. (Doc 39 – Pg 7.)

**B.     Al Rushaid Fails to Perform Under the Joint Venture and Related Contracts**

Unrelated to the Sales Agreements, in 2009, the Saudi Arabian Oil Company ("Saudi Aramco") engaged Dresser-Rand Company to manufacture and supply its compressor and steam turbine products to Saudi Aramco pursuant to the Corporate Procurement Agreement (the "CPA"). (Doc 39 – Pgs 9, 11.) The CPA required Dresser-Rand Company to establish a Joint Venture with a Saudi partner and to construct a new manufacturing facility in Saudi Arabia to fulfill Saudi Aramco's purchase orders issued to Dresser-Rand Company. (Doc 39 – Pgs 12, 15.)

Accordingly, in March 2009, ARPIC and Dresser-Rand Holdings (Netherlands) B.V. ("DRH") entered into a Business Venture Agreement (the "BVA") whereby the parties formed Dresser-Rand Arabia LLC (the "Joint Venture"), with DRH owning 50.1% and ARPIC owning 49.9% of the Joint Venture. (Doc 39 – Pg 14.) DRH was later replaced by DRBV by merger. (Doc 39 – Pgs 11, 13-14, 29.)

After the Joint Venture was formed, however, the relationship quickly soured. This was, in part, due to ARPIC's failure to meet its financial obligations and other administrative commitments to the Joint Venture, including, among other things, ARPIC's failure to meet its capital contributions. (Doc 39 – Pg 27.) ARPIC's failure to capitalize the Joint Venture, as required, resulted in an arbitral tribunal rendering a $45 million award against ARPIC. (Doc 39 – Pgs 27-28.)

**C.    Siemens Energy's Parent Company Acquires DRG, Thereby Acquiring the Relevant Contracts in this Case**

In 2015, Siemens Energy's then-parent acquired DRG. (Doc 39 – Pg 23.) Throughout the amended complaint, Appellants confuse and conflate the Siemens entities, referring generally to "Siemens" and "various Siemens' subsidiaries" without any further specificity, such that it is unclear at times which allegations relate to Siemens Energy, which allegations relate to Siemens Energy's parent, or which allegations relate to the Siemens conglomerate as a whole. (*See, e.g.,* Doc 39 – Pgs 23, 24, 46.) For example, Appellants reference both "Siemens" and "Siemens Energy" in the same sentence several times in the amended complaint. (Doc 39 – Pgs 21, 25, 26, 46.) Appellants have also habitually mischaracterized the Dresser-Rand entities and disregarded corporate formalities between the Siemens and Dresser-Rand entities. This alone underscores the shotgun nature of Appellants' pleading and their inability to articulate claims such that Siemens Energy could even determine or respond to the relief requested. Nevertheless, Siemens Energy recognizes that at the dismissal stage, it must take these allegations in the amended complaint as true. Even doing so, Appellants' claims fail on the face of the amended complaint.

Appellants allege that, at the time of the acquisition, DRG's and Siemens Energy's product lines were largely focused on different industries. (*See* Doc 39 – Pgs 6, 9-11, 20-22.) Like any business seeking to expand its operations, the

acquisition made business sense because DRG's portfolio focused on oil and gas products that would complement "Siemens'" existing portfolio, which focused on power generation. (Doc 39 – Pg 22.) Although Siemens Energy's existing portfolio consisted of compressors and steam turbines (like DRG's), "the focus of the companies' respective products was very different." (Doc 39 – Pg 22.) "Though [Siemens] had long been a leading manufacturer of gas turbines and compressors, that equipment was limited to power generation for building-based industrial applications and processes, as well as for rail, air, and water transportation." (Doc 39 – Pg 20.) For example, "[i]n or about 2011, Siemens, together with Saudi Aramco and Saudi Electricity Company, jointly committed to build turbine manufacturing facilities in the Dammam Industrial District." (Doc 39 – Pg 21.)

Further, similar to the agency relationship that ARTC and DRG had, Appellants allege that Siemens had a long-standing sales agency relationship with a Saudi Arabian company, Juffali. By the time the acquisition was completed in mid-2015 "Siemens and Juffali had been working together for more than fifteen years" as business partners in Saudi Arabia. (Doc 39 – Pgs 23-24.)

As a result of the acquisition, Appellants allege that "**Siemens Energy has direct and indirect control over [DRBV]**" and that "**Siemens Energy, through [DRBV], exercises control over the Joint Venture.**" (Doc 39 – Pgs 40 and 42 (emphasis added).)

## II. RELEVANT PROCEDURAL HISTORY LEADING UP TO THIS CASE

This case is Appellants' sixth attempt to bring claims against various Siemens Energy and Dresser-Rand entities related to the Joint Venture. All of Appellants' claims thus far have failed. The instant claims, likewise, must fail.

In 2019, an arbitral tribunal issued a $45 million award against ARPIC for its various breaches of its contractual obligations under the BVA, including ARPIC's failure to pay its share of capital contributions for the Joint Venture. (*See* Doc 39 – Pgs 27-28.) The tribunal thus ordered ARPIC to pay this shortfall to the Joint Venture. (Doc 40 – Pgs 2-3; Doc 19-2 – Pg 182.)[2] After Appellants filed their complaint, but before their amended complaint in September 2022, ARPIC satisfied the arbitration award and paid its share of capital contributions for the business. (*Compare* Doc 1 – Pg 22 *with* Doc 39 – Pg 28.) ARPIC alleges that the prior arbitration award does not account for the damages sought in the current litigation. (Doc 39 – Pg 28.)

---

[2] Siemens Energy previously filed a Request for Judicial Notice with the district court, requesting the district court take judicial notice of certain public records filed with the Supreme Court of the State of New York. These documents reflect the lengthy litigation history that led to this appeal—including pleadings and judgments from prior cases involving the parties. *See Samara v. Taylor*, 38 F.4th 141, 143 (11th Cir. 2022). Siemens Energy submits it is appropriate for the Court to take judicial notice of these proceedings here as well. *See id.* ("We take judicial notice of the lengthy litigation history that led to this appeal—including the pleadings, records, and judgments that appear on the district court's docket.").

Additionally, from 2016 to 2018, ARPIC brought three different lawsuits in Saudi Arabia against DRBV and the Joint Venture's appointed General Manager, complaining about the management of the Joint Venture. The Saudi courts dismissed all three lawsuits as improper and/or unsubstantiated. (Doc 40 – Pg 2; Doc 19-2 – Pgs 220-229.)

In May 2020, Appellants commenced a lawsuit in New York against several Siemens and Dresser-Rand entities—namely, Siemens Energy, Siemens AG, Siemens Corporation, Siemens Ltd. (Saudi Arabia), DRG, and DRIBV—asserting near identical claims to those now being brought in this action against Siemens Energy. (Doc 40 – Pgs 1-2.) The New York court dismissed the action in its entirety in November 2021. (*See* Doc 19-4 – Pg 80.)

Also in November 2021, before filing the instant lawsuit, ARPIC commenced an international arbitration against its Joint Venture partner, DRBV, again advancing nearly identical allegations to those brought in New York and in this action. (Doc 40 – Pg 2.) That arbitration matter remains pending and will address many issues that would have a preclusive effect on ARPIC's claims in this case should these claims survive dismissal.

## III.   COURSE OF PROCEEDINGS AND DISPOSITION IN THE DISTRICT COURT

Appellants commenced this lawsuit in December 2021. In their complaint, Appellants asserted claims for tortious interference, unjust enrichment, and unfair

competition. Siemens Energy moved to dismiss the complaint because it sought to litigate issues time-barred under Florida law and failed to state a claim upon which relief could be granted for all causes of action. (*See generally* Doc 17.) The district court dismissed the complaint without prejudice because "the Complaint is an impermissible shotgun pleading" and permitted ARPIC to file an amended complaint to correct the deficiencies noted. (Doc 38 – Pgs 6-7.)

On September 28, 2022, Appellants filed their amended complaint, purporting to correct the deficiencies identified by the district court. (Doc 39.) The amended complaint contains nearly the same "common allegations of fact" and an identical claim for unjust enrichment. (*Compare* Doc 1 *with* Doc 39.) The amended complaint revised the unfair competition claim to remove references to misappropriation, but keeps claims related to false misrepresentations. The amended complaint also broke out the tortious interference claims to allege separate counts for each contract that Appellants believe Siemens Energy diverted from the Joint Venture by virtue of Siemens Energy's "control of the Joint Venture's operations, product line, and personnel." (*See* Doc 39 – Pgs 31, 33, 35, 37.)

Siemens Energy again sought dismissal because the amended complaint was still an impermissible shotgun pleading and because it otherwise failed to state a claim upon which relief can be granted for the causes of action of tortious interference, unfair competition, and unjust enrichment. (Doc 40.)

The district court granted Siemens Energy's motion to dismiss and dismissed the amended complaint *without* prejudice. (Doc 62.) The district court first found that, with respect to ARPIC's tortious interference with contract claims (counts one through seven), "Defendant allegedly had both a supervisory interest in how the Joint Venture was conducted and a financial interest in how the BVA was performed and, therefore, ARPIC has failed to allege that Defendant was a stranger to the business relationship." (Doc 62 – Pgs 5-7.) The district court also found that ARPIC failed to allege that Siemens Energy acted with improper means. (*Id.*) With respect to ARTC's tortious interference claims (counts nine and ten), the district court found that "that Defendant was not a stranger to the relationship between ARTC and DRG" and ARTC failed to adequately allege improper means otherwise. (*Id.* at 7.)

The district court dismissed ARPIC's unfair competition claim because the claim consisted only of "conclusory statements" that left the district court "unclear as to what claim is actually being alleged" and because those conclusory allegations were "contradicted by the facts alleged in the Amended Complaint." (Doc 62 – Pgs 7-8.) Finally, ARTC's unjust enrichment claim was dismissed for "failure to comply with the minimum pleadings standards." (*Id.* at 9.)

The district court's order dismissing Appellants' claims should be affirmed. Appellants' arguments on appeal lack merit and should be rejected by the Court.

## STANDARD OF REVIEW

An appeal from an order dismissing claims under Rule 12(b)(6) is reviewed *de novo*. To withstand a Rule 12(b)(6) motion to dismiss, "the plaintiff must state a claim to relief that is plausible on its face." *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1279 (11th Cir. 2017) (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

While the Court accepts as true all well-pleaded allegations in the complaint, "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Iqbal*, 556 U.S. at 663). Indeed, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). When a court considers the range of possible interpretations of the defendant's alleged conduct based on the well-pled facts, "if the more likely explanations involve lawful, non-actionable behavior, the court should find that the plaintiff's claim is not plausible." *Auto-Owners Ins. Co. v. Ace Elec. Serv.*, 648 F. Supp. 2d 1371, 1376 (M.D. Fla. 2009) (citing *Iqbal*, 556 U.S. at 680).

## SUMMARY OF THE ARGUMENT

The district court correctly dismissed Appellants' claims.

As a matter of Florida law, absent pleading or proof of pure malice or improper means, only strangers to a contract can tortiously interfere with that contract. *Palm Beach County Health Care Dist. v. Prof'l Med. Educ., Inc.*, 13 So. 3d 1090, 1094 (Fla. 4th DCA 2009). Here, Appellants' factual allegations in the amended complaint affirmatively demonstrate that Siemens Energy is not a stranger to the subject contracts on which Appellants' tortious interference claims are based and did not engage in malice or improper means. On these allegations, the district court correctly concluded that Appellants failed to state tortious interference claims against Siemens Energy.

As the district court observed, Appellants not only plead that Siemens Energy was the parent company to "DRG and its affiliates" (Doc 39 – Pg 2), but also that Siemens Energy had both a supervisory interest in how the Joint Venture was conducted and a financial interest in how the BVA was performed. (Doc 39 – Pgs 2-3, 24, 27, 40, 42.) Similarly, Appellants' allegations that Siemens Energy exercised control over and financial interest in the Sales Agreements also demonstrates that Siemens Energy was *not* a "stranger" to the Sales Agreements. (Doc 39 – Pg 44.)

In this Court, Appellants argue Siemens Energy is a stranger to the BVA and Sales Agreement because it was not the parent of Dresser Rand when those

agreements were first consummated. From this incorrect premise, Appellants contend that they did not allege or infer that Siemens Energy had a supervisory interest in how the Joint Venture was conducted or financial interest in how the BVA was performed, but rather, assert that their tortious interference claims are premised on allegations that Siemens Energy diverted contracts and opportunities away from the Joint Venture after the acquisition was consummated, and used its control over DRBV to cause it to breach the BVA. (Appellants' Br. at 21.) ARPIC's argument that Siemens Energy was not a "stranger" to the BVA because it was not the parent of Dresser-Rand at the time the BVA was signed in 2009 is not supported by the overwhelming majority of Florida law, which holds that whether an alleged contract interferer is a stranger to the subject contract is determined at the time of the alleged tortious interference. *See Bridge Fin., Inc. v. J. Fischer & Assoc*s., 310 So. 3d 45, 50 (Fla. 4th DCA 2020) (dismissing tortious interference claims based on relationship of parties at the time of the alleged interference).

Further, even if the amended complaint pleads facts that Siemens Energy was a stranger to the BVA and Sales Agreements (which is denied), the amended complaint alleges facts that Siemens Energy acted for legitimate business reasons and did not engage in pure malice or improper means with respect to the contracts at issue. Accordingly, the district court correctly dismissed ARPIC's and ARTC's respective tortious-interference claims.

With respect to ARPIC's "unfair competition" claim, ARPIC failed to plead that ARPIC and Siemens Energy compete for a common pool of customers. Instead, ARPIC pleaded the opposite. Specifically, ARPIC alleges that Siemens Energy's and the Joint Venture's products were "very different" and they had "distinct product lines." In addition, ARPIC omits any allegation that Siemens Energy's conduct caused customer confusion, a required element of ARPIC's unfair competition claim.

Finally, ARTC's unjust enrichment claim is deficient because, as the district court correctly found, it is entirely unclear whether ARTC is alleging that Siemens Energy received a direct benefit by retaining the commissions allegedly owed to ARTC.

In total, in their sixth and latest attempt to bring claims related to the Joint Venture and Sales Agreements, Appellants fail to state any claims upon which relief can be granted, entirely pleading themselves out of court.

## ARGUMENT AND CITATIONS OF AUTHORITY

## I. APPELLANTS' AMENDED COMPLAINT AFFIRMATIVELY PLEADS THAT APPELLANTS DID *NOT* INTERFERE WITH THE BVA

The amended complaint advances allegations demonstrating that Siemens Energy was not a stranger to the BVA and that Siemens Energy's purported interference with the BVA was not a result of pure malice or improper means, but that Siemens Energy had legitimate business purposes for its alleged actions in

controlling or operating the Joint Venture. That is, the allegations in the amended complaint comprising counts one through seven actually preclude Appellants' tortious interference claims relating to the BVA as a matter of law. Accordingly, the district court correctly dismissed counts one through seven for failure to state a claim under Rule 12(b)(6).[3]

Appellants argue in this Court that Siemens Energy is a stranger to the BVA because it "did not acquire DRG and its subsidiaries until *six years after* the BVA was entered." (Appellants' Br. at 20.) Appellants alternatively argue that Siemens Energy acted with malice and improper means, among other things, by encouraging DRBV to pursue an arbitration against ARPIC for its failure to meet its capital requirements under the BVA. Appellants' arguments lack merit.

## A. Siemens Energy Is Not a "Stranger" to the BVA

As a matter of law, Siemens Energy is not a stranger to the BVA merely because DRBV and ARPIC entered into the BVA prior to DRG's acquisition in 2015.

---

[3] Counts six and seven still constitute "shotgun pleadings" because they serve as "catch all" claims for any other contracts that Siemens Energy may have entered into that fall within the scope of business of the Joint Venture and thus breach the BVA. Such broad language is duplicative of counts one through five and exactly the language that the district court found was improper and dismissed in the original complaint. (Doc 38 – Pg 8.) *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015) (explaining that one type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief).

To state a claim for tortious interference in Florida, a claimant must show (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference by the defendant; and (4) damage to the plaintiff as a result of the interference. *Font & Nelson, PLLC v. Path Med., LLC*, 317 So. 3d 134, 138-39 (Fla. 4th DCA 2021). "[T]ortious interference with a contract and tortious interference with a business relationship are basically the same cause of action. The only material difference appears to be that in one there is a contract and in the other there is only a business relationship." *Smith v. Ocean State Bank*, 335 So. 2d, 641, 642 (Fla. 1st DCA 1976).

Under Florida law, only strangers to a contract or business relationship may be liable for a claim of tortious interference. *Palm Beach Cnty. Health Care Dist.*, 13 So. 3d at 1094. "A defendant is not a 'stranger' to a business relationship if the defendant 'has any beneficial or economic interest in, or control over, that relationship.'" *Id.* (quoting *Nimbus Tech., Inc. v. Sunndata Prods., Inc.*, 484 F.3d 1305, 1309 (11th Cir. 2007)); *see also Gunder's Auto Center v. State Farm Auto Ins. Co.*, 422 F. App'x 819, 822 (11th Cir. 2011) (As a matter of law, "[t]here can be no claim [for tortious interference] where the action complained of is undertaken to safeguard or promote one's financial or economic interest.") (citing *Barco Holdings, LLC v Terminal Inv. Corp.*, 967 So. 2d 281, 293 (Fla. 3d DCA 2007)). Thus, "[i]f

the First Amended Complaint includes allegations that any Defendant has any beneficial or economic interest in, or control over the Agreement then that Defendant is not a 'stranger.'" *Alticor Inc. v. UMG Recordings, Inc.*, No. 6:14-cv-542-Orl-37DAB, 2015 U.S. Dist. LEXIS 20536, at *4-5, 10 (M.D. Fla. Feb. 20, 2015) (internal quotations omitted).

Here, the amended complaint contains numerous allegations that Siemens Energy has an economic interest in or control over the BVA and the Joint Venture, including the following:

- Siemens Energy acquired DRG to integrate the two businesses and that, as a result of the acquisition, Siemens Energy has "direct and indirect control over DRH," a Dresser-Rand company, and therefore exercises control over the Joint Venture. (Doc 39 – Pgs 40, 42.)

- Siemens Energy exercised its control over "DRG entities" to cause "DRG entities to commence an arbitration proceeding before the ICC to hold ARPIC accountable for its capital contribution obligations" and to subsequently enforce the multi-million dollar award obtained against ARPIC in the arbitration. (Doc 39 – Pgs 27-28.)

- "The acquisition via Siemens Energy also allowed Siemens to reap the longterm benefits of DRG's service and repair revenues." (Doc 39 – Pg 23.)

- "As Siemens touted in its PowerPoint presentation, DRG's 'service revenue streams via large installed bases'—which then accounted for fifty percent (50%) of DRG's total revenues—would provide Siemens with '[s]olid double digit profit margins' 'from day one.'" (Doc 39 – Pg 23.)

- Siemens Energy was "using the Joint Venture's product line and personnel" to secure and fulfill other contracts and opportunities. (Doc 39 – Pg 24.)

- "(i) Siemens Energy has purposely excluded ARPIC from all aspects of the Joint Venture, and (ii) Siemens Energy has been fulfilling purchase orders issued under the CPA and the other aforementioned contracts at the Siemens Facility and denying ARPIC all related benefits." (Doc 39 – Pg 27.)

These allegations regarding Siemens Energy's business interests in "DRG entity" operations, combined with the allegations of control and the alleged ownership interest between Siemens Energy and DRG, when taken as true, demonstrate that Siemens Energy was *not* a stranger to the BVA. *See Johnson Enters. of Jacksonville v. Fpl Grp.*, 162 F.3d 1290, 1321-22 (11th Cir. 1998) (holding that parent company "had the requisite financial interest" such that it was privileged to interfere with its subsidiary's contracts); *Volvo Aero Leasing, Ltd. Liab. Co. v. VAS Aero Servs., Ltd. Liab. Co.*, 268 So. 3d 785, 787 (Fla. 4th DCA 2019) (holding that a company that shared ultimate shareholders with and possessed an indirect ownership interest in a company it entered into a management services agreement with had a sufficient supervisory and financial interest such that it was not a stranger to that company's pre-existing contracts); *Babson Bros. Co. v. Allison*, 337 So. 2d 848, 850 (Fla. 1st DCA 1976) (finding Illinois corporation was privileged to interfere with contracts of a Georgia corporation where, in addition to common stock ownership, the Illinois company had a clear financial interest in the distributor's

contracts). Thus, contrary to Appellants' arguments, there is no plausible support in the amended complaint to infer that Siemens Energy is a "stranger" to the BVA—rather, the allegations in the amended complaint establish the opposite. *See Skytruck Company v. Sikorsky Aircraft Corporation,* Case No. 2:09-CV-267-FtM-36SPC, 2011 U.S. Dist. LEXIS 165277, at *13-16 (M.D. Fla. Mar. 16, 2011) (dismissing cause of action for tortious interference pursuant to Rule 12(b)(6) where allegations demonstrated that the parent company was involved in the business relationship and transaction for sale of an aircraft).

Appellants go on to argue that Siemens Energy is a stranger to the BVA because it was not the parent of DRG at the time the BVA was signed in 2009. Yet, Florida law makes clear that the relevant period to determine whether the defendant was a stranger to the contract or business relationship is when the purported tortious conduct occurred, not when the contract or business relationship was first formed. *See Bridge Fin., Inc. v. J. Fischer & Assocs.,* 310 So. 3d 45, 50 (Fla. 4th DCA 2020) (dismissing tortious interference claims based on relationship of parties at the time of the alleged interference); *Volvo Aero Leasing, Ltd. Liab. Co.,* 268 So. 3d at 787 (finding that the defendant company providing management services had a supervisory and financial interest in the pre-existing contract and "acted with a supervisory interest in how the [business relationship at issue] was conducted when [the alleged tortious conduct occurred]"); *accord ULQ, LLC v. Meder*, 666 S.E.2d

713, 720 (Ga. Ct. App. 2008) ("Meder was admittedly a ten percent owner in ULQ (a party to the business relationships or contracts) at the time he allegedly interfered, and therefore could not have been a stranger."). Appellants' allegations that Siemens Energy interfered with the BVA at various points from 2017 to the present, well *after* the DRG acquisition, precludes their "stranger" argument.

Appellants' reliance on *Hyatt Corporation v. Epoch-Florida Capital Hotel Partners, Ltd.*, No. 6:07-cv-1260-Orl-KRS, 2008 U.S. Dist. LEXIS 12693 (M.D. Fla. Feb. 20, 2008) to support their argument that the relevant time to analyze the defendant's relationship is at the time of contracting, misses the mark. Instead, the court in *Hyatt* rejected the bright line rule that "a parent corporation can ***never*** tortiously interfere with the preexisting business relationships and contracts of its recently acquired subsidiary." *Id.* at \*11 (emphasis added). The court's observation that Hyatt was a stranger to the contract at its inception was not dispositive of the court's decision to preclude dismissal of the tortious interference counts. *See id.* at \*10. Indeed, nothing in *Hyatt* stands for the proposition that the inception of the contract fixes the relevant time for which an alleged subsequent interferer may be determined to be a stranger to the contract. Nor would the *Hyatt* court have reasonably reached that conclusion as it would contradict the overwhelming weight of authority on this point, as set forth above.

Even so, the corporate relationship between Siemens Energy and DRG at the time of the alleged interference was not the only relevant allegation at issue. The district court did not rule that the relationship between Siemens Energy and DRG was alone dispositive of whether Siemens Energy was a stranger to the BVA. Indeed, the district court acknowledged that a parent-subsidiary relationship alone would not be sufficient to show that Siemens Energy was not a stranger to the BVA. (Doc 62 – Pgs 4-5.)

Appellants not only allege that Siemens Energy acquired DRG, they go on to state that Siemens Energy controlled the Joint Venture and that it did so for economic reasons. (*See, e.g.,* Doc. 39 – Pgs 26-28, 33, 35.) Reviewing the complaint in the light most favorable to Appellants, the district court correctly observed that:

> ARPIC alleges that it entered into the BVA and amended BVA with DRG prior to DRG's acquisition by Defendant. However, ARPIC also alleges that Defendant has interfered specifically by using its control over DRG to maximize the profitability of the business held by the Joint Venture for its benefit. In fact, Plaintiffs allege that one of the reasons for the acquisition of DRG was Defendant's interest in benefiting from the Joint Venture. (Doc. 39, ¶¶ 99, 107–08.)

On the allegations, the district court determined that Siemens Energy "had both a supervisory interest in how the Joint Venture was conducted and a financial interest in how the BVA was performed and, therefore, ARPIC has failed to allege that Defendant was a stranger to the business relationship." (Doc 62 – Pg 5); *accord*

*Palm Beach Cnty. Health Care Dist.*, 13 So. 3d at 1094 (finding that, as a general rule, "[u]nder Florida law, a defendant is not a stranger to a business relationship, and thus cannot be held liable for tortious interference, when it has a supervisory interest in how the relationship is conducted or a potential financial interest in how a contract is performed").

Appellants also argue that Siemens Energy is a stranger to the BVA because Siemens Energy failed to ensure the BVA was successful and instead took actions to "abandon" the Joint Venture, doing so through "its control over DRH." (Appellants' Br. at 21-22.) Even if these allegations were true, they merely confirm Siemens Energy's supervisory interest in how the Joint Venture was conducted. *See Volvo Aero Leasing, Ltd. Liab. Co.*, 268 So. 3d at 789 (concluding H.I.G. was not a stranger to a business relationship and finding that H.I.G. acted with a supervisory interest when it caused VAS to stop payments to VAS's counterparty).

Based on the allegations of control and economic interest between Siemens Energy and DRBV in the amended complaint, the district court correctly found that Siemens Energy was not a stranger to the BVA.

### B. ARPIC Did Not Sufficiently Allege that Siemens Energy Acted with Pure Malice or Improper Methods to Interfere with the BVA

Appellants next argue that Siemens Energy's actions were not privileged because they were motivated by a malicious intent or improper means. Even if Siemens Energy is a stranger to the BVA, ARPIC could state a claim for tortious

interference against Siemens Energy by alleging that Siemens Energy had a "purely malicious motive divorced from any legitimate competitive economic interest." *Duty Free Ams., Inc. v. Estee Lauder Cos.*, 797 F.3d 1248, 1280 (11th Cir. 2015) (internal quotations omitted) (alleging a company took action to protect its economic interest is not an improper method). As the district court acknowledged (Doc 62 – Pg 5), "Florida law is clear that the qualified privilege to interfere 'is not negated by concomitant evidence of malice. It is only when malice is the *sole* basis for interference that it will be actionable.'" *Romika-USA, Inc. v. HSBC Bank USA, N.A.*, 514 F. Supp. 2d 1334, 1341 (S.D. Fla. 2007) (citing *McCurdy v. J.C. Collis*, 508 So. 2d 380, 383 (Fla. 1st DCA 1987)).

The amended complaint negates any such inference of malice because it pleads that Siemens Energy took actions related to the Joint Venture not for the sole purpose of interfering with the BVA and harming ARPIC's prospective contract interests, but for legitimate business reasons.

Appellants give numerous business reasons for Siemens Energy's alleged interference with the BVA, alleging that:

- "ARPIC's participation in the Joint Venture was no longer necessary or desirable because (i) the Joint Venture had already endured the expense-laden start-up period associated with the construction of the JV Facility and was about to earn the long-awaited profits yielded by the service, repair, and maintenance, and (ii) Saudi law no longer required the participation of a Saudi-based partner in a joint venture." (Doc 39 – Pg 24.)

- Siemens Energy has essentially integrated Dresser-Rand's products in with its service line, noting that "Siemens Energy's use of DRG's product line is not limited to securing opportunities in Saudi Arabia" and that, for example, "Siemens Energy supplied a Siemens SGT-750 gas turbine driving two legacy Dresser-Rand DATUM compressors to Encana's Pipestone processing facility in Canada." (Doc 39 – Pg 26.)

Accordingly, the district court correctly found that "although Plaintiffs made conclusory allegations of malice, Plaintiffs explicitly allege that Defendant's actions were motivated, at least in part, by legitimate business interest." (Doc 62 – Pgs 5-6.)

Appellants go on to argue that even if ARPIC did not allege pure malice, the amended complaint at least pleads that Siemens Energy used improper means to interfere with the BVA. Based on the allegations in the amended complaint, the district court found that ARPIC did not allege improper means, explaining:

> Improper means which will defeat the competition privilege include physical violence, misrepresentations, intimidation, conspiratorial conduct, illegal conduct and threats of illegal conduct." *Id.* (quoting *Bluesky Greenland Env't Sols., LLC v. 21st Century Planet Fund, LLC*, 985 F. Supp. 2d 1356, 1367 (S.D. Fla. 2013)); *see also Alticor Inc.*, 2015 WL 736346, at *2 (citing Fla. Std. Jury Inst. in Civil Cases § 408.6). ARPIC does not allege that Defendant used physical violence, intimidation, conspiratorial conduct, illegal conduct, or threats of illegal conduct. At best, ARPIC alleges that Defendant caused DRG to bring a meritorious arbitration and to enforce the award against ARPIC and makes conclusory allegations that Defendants conduct was "dishonest," done in "bad faith," "malicious," and "knowing." (Doc. 39, ¶¶ 128–129, 144–146, 154–156, 165–167, 175– 177, 185–187, 197– 199, 211–212.) However, the filing of a proper legal claim and the enforcement of an arbitration award are not illegal

> and ARPIC's conclusory allegations of bad faith conduct
> fall short of plausibly alleging improper means.

(Doc 62 – Pg 6.)

Although the determination of whether the interference was improper may be left to the jury if there is "room for differing views", when plaintiffs have failed to adequately allege improper methods, as Appellants have done here, Florida courts have dismissed these claims as a matter of law. *Duty Free Ams., Inc.*, 797 F.3d at 1280-81.

Conclusory allegations that Siemens Energy participated in opportunities that purportedly belonged to the Joint Venture, or that Siemens Energy profited from DRBV's alleged breaches, merely restate the elements of tortious interference and are not sufficient, as a matter of law, to allege improper methods. *See Wackenhut Corp. v. Maimone*, 389 So. 2d 656, 658 (Fla. 4th DCA 1980) ("Competition for business is not per se an actionable interference even though it is intentional."); *Shenzhen Kinwong Elec. Co. v. Kukreja*, No. 18-61550-CIV, 2021 U.S. Dist. LEXIS 236107, at *42, 47 (S.D. Fla. Dec. 8, 2021) (dismissing a counterclaim for tortious interference where it was not sufficiently alleged "that the Plaintiffs' *sole* motive was to maliciously harm the Defendants" and only "bare and wholly conclusory statements" of improper methods were made). "[A]s a matter of law [] conduct alleged to breach a contract may not simultaneously constitute the 'improper method'

used to procure breach of a contract." *Alticor Inc.*, 2015 U.S. Dist. LEXIS 20536, at *10 (internal quotations omitted).

Further, DRBV's pursuit of a legitimate arbitration and subsequent enforcement of the award is not an improper method (and only serves to highlight ARPIC's own prior material breaches of BVA). As the district court acknowledged, "the filing of a proper legal claim and the enforcement of an arbitration award are not illegal and ARPIC's conclusory allegations of bad faith conduct fall short of plausibly alleging improper means." (Doc 62 – Pg 6.) Indeed, as ARPIC recognizes, it failed to pay its share of capital contributions under the BVA, and ultimately only paid those amounts owed to the Joint Venture after an arbitration award was rendered against it and enforcement pursued. (Doc 40 – Pgs 2-3.)

ARPIC's conclusory recitals that Siemens Energy's acts were "malicious," "dishonest," in "bad faith," or "illegal" are likewise insufficient. (Doc 39 – Pgs 37, 41.) Where ARPIC alleges that Siemens Energy tortiously interfered by engaging in "fraudulent or illegal means," it must meet Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements and identify "the who, what, when, where, and how of the fraud alleged." *Omnipol, A.S. v. Multinational Def. Servs., Ltd. Liab. Co.*, 32 F.4th 1298, 1307 (11th Cir. 2022). ARPIC's bare pleadings fail to meet the 12(b)(6) pleading standard, much less the heightened standard for alleging fraud under Rule 9(b).

In sum, the amended complaint alleges that Siemens Energy had a valid business interest in keeping the Joint Venture operational. Assuming the allegations in the amended complaint are true, the allegations do not establish that Siemens Energy acted solely out of malice or improper methods. *Johnson Enters. of Jacksonville*, 162 F.3d at 1321-22 (finding that legitimate conduct "tinged with animosity and malice" is still privileged) (internal quotations and citations omitted). As such, contrary to Appellants' argument, the allegations in the amended complaint regarding alleged improper means do not create issues of fact that should be resolved by the trier of fact — "the matter may be resolved as a matter of law." *Alticor Inc.*, 2015 U.S. Dist. LEXIS 20536, at *9 (resolving the propriety of methods allegedly used by a defendant to tortiously interfere with a plaintiff's contract as a matter of law).

Accordingly, the dismissal of ARPIC's tortious-interference claims should be affirmed.

## II.   THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH THE SALES AGREEMENTS

ARTC's claims of tortious interference with the Sales Agreements (Counts 9 and 10) suffer from the same deficiencies as ARPIC's tortious interference claims relating to the BVA — Siemens Energy is not a stranger to the Sales Agreements.

## A. Siemens Energy Is Not a "Stranger" to the Sales Agreements

Similar to the BVA, the allegations in the amended complaint state that Siemens Energy was not a stranger to the Sales Agreements. With respect to the Sales Agreements, ARTC alleges:

- "Siemens Energy has also interfered with ARTC's rights under the Sales Agency Agreement by, upon information and belief, diverting sales, revenues, transactions, and purchase orders *from* the books of DRG and the Joint Venture to its own books to avoid paying commissions owed *to* ARTC under the Sales Agency Agreements, and keeping for itself the benefits of both the sales generated by ARTC and the commissions owed to ARTC." (Doc 39 – Pgs 28-29 (emphasis in original).)

- "as late as 2018, the parties continued to hold meetings and exchange communications at and in which Siemens Energy and/or DRG expressed their intent to pay commissions owed to ARTC" (Doc 39 – Pg 29.)

The allegations here essentially track those advanced in *Skytruck Company v. Sikorsky Aircraft Corporation*. In *Skytruck*, the district court analyzed whether a parent company, Sikorsky, tortiously interfered with the business relationship and contracts between the plaintiff, Skytruck, and its newly acquired subsidiary, PZL. *Skytruck Co.*, 2011 U.S. Dist. LEXIS 165277, at *2, 7. PZL authorized Skytruck to act as its exclusive sales representative to the government of Iraq pursuant to a written agreement that provided for sales commissions to Skytruck. *Id.* at *3. Sikorsky acquired PZL in 2007 and thereafter controlled PZL's management and operations. *Id.* at *2. PZL then contracted with a customer to sell twelve aircrafts,

however Skytruck did not receive any compensation for its services in facilitating the sale from either PZL, Sikorsky, or the customer. *Id.* at *5.

In analyzing whether Sikorsky's interference was justified, the district court found that Sikorsky was not a stranger to the business relationship with the customer and "Skytruck's argument that Sikorsky cut Skytruck out of the sale to increase its profits further demonstrates that Sikorsky was involved in the business relationship and the transaction for the sale of the Aircraft." *Id.* at *15. Thus, the court held that Skytruck failed to state a claim upon which relief could be granted for its tortious interference claims against Sikorsky and dismissed the claim. *Id.*

Similarly here, ARTC alleges that it acted as the sales agent for DRG to facilitate the sale of "certain DRG products in Saudi Arabia." (Doc 39 – Pg 7.) ARTC also alleges it did not receive commissions owed pursuant to the Sales Agreements because Siemens Energy caused DRG not to pay those commissions. (Doc 39 – Pg 44.) When taken as true, these allegations imply that Siemens Energy had control over and a financial interest in the Sales Agreements, making Siemens Energy privileged to interfere with the Sales Agreements. *Palm Beach Cnty. Health Care Dist.*, 13 So. 3d at 1094. Again, the district correctly found that based on the allegations of ownership and control over DRG in the amended complaint, Siemens Energy was not a stranger to the Sales Agreements and the relationship between ARTC and DRG. (Doc 62 – Pg 7.)

**B.** **ARTC Failed to Allege Siemens Energy Acted with Pure Malice or Improper Methods to Interfere with the Sales Agreements**

Even if ARTC's factual allegations could imply that Siemens Energy is a stranger to the Sales Agreements, it does not plead pure malice or improper means of interference. ARTC alleges that Siemens Energy "wrongfully interfered" with ARTC's rights under the Sales Agreements by denying it millions in commissions. (Doc 39 – Pg 9.) Beyond this, ARTC makes conclusory statements about bad faith and illegal interference but does not provide any further detail about what actions could have constituted such interference. (Doc 39 – Pgs 44-45.) While ARTC seems to allege that merely repeating the elements or making conclusory allegations about improper methods is sufficient, the allegations fall far short of the pleading standard. Further, where ARPIC alleges that Siemens Energy tortiously interfered by engaging in "fraudulent or illegal means," it again fails to meet the heightened pleading standard of Rule 9(b) and does not identify "the who, what, when, where, and how of the fraud alleged." *Omnipol, A.S.*, 32 F.4th at 1307.

As the district court noted:

> ARTC alleges that Defendant acted with the intent to maximizes its profits at ARTC's expense, which means the pure malice exception does not apply. As to improper motives, in Count Ten ARTC makes conclusory allegations of malice, dishonest conduct, and illegal means but fails to plead with any specificity what actions constitute improper means. (*See, e.g.*, Doc. 39, ¶¶ 239–241). As to Count Nine, ARTC makes the same conclusory allegations of misconduct and illegal means, but also

> alleges that Defendant assured ARTC that it intended to pay outstanding commissions. (*Id.* ¶¶ 135–136). While, if false, these statements might support a claim of improper means, ARTC fails to allege that these statements were misrepresentations at the time they were made. Thus, the Court finds that ARTC also failed to adequately allege a claim for tortious interference against Defendant and Counts Nine and Ten will be dismissed.

(Doc 62 – Pg 7.)

The district court's reasoning is sound, supported by the case law, and should be affirmed. ARTC does not specify any "improper means" in counts nine and ten that Siemens Energy took specifically as to ARTC, and therefore fails to meet the Rule 12(b)(6) pleading standard by failing to present any factual allegations to support its mere recitation of this element of its claim. As such, ARTC fails to state a claim for tortious interference with the Sales Agreements, and the district court's order should be affirmed.

## III. THE DISTRICT COURT PROPERLY DISMISSED ARPIC'S UNFAIR COMPETITION CLAIM

To state a claim for unfair competition under Florida common law, ARPIC must plead "deceptive or fraudulent conduct of a competitor and likelihood of customer confusion." *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1493-94 (11th Cir. 1990). ARPIC also "must allege that it competes with its opponent for a common pool of customers." *Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1324 (M.D. Fla. 2007); *see also ACG S.*

*Ins. Agency, Ltd. Liab. Co. v. Safeco Ins., Co.*, No. 8:19-cv-528-T-36AAS, 2019 U.S.

Dist. LEXIS 229659, at *27-28 (M.D. Fla. Dec. 16, 2019) (dismissing claim for

unfair competition where, although the plaintiff pled that the conduct was "improper"

and designed to vitiate the plaintiff's contractual rights, the complaint was "devoid

of indication that such conduct was fraudulent or deceptive").

Here, Appellants allege that Siemens Energy unfairly competed with the Joint

Venture and its operations because Siemens Energy "falsely represented to Saudi

Aramco and other customers of the Joint Venture that ARPIC has remained actively

involved in the Joint Venture." (Doc 39 – Pg 43.) The district court articulated two

reasons to dismiss this unfair competition claim. First, the district court found:

> Although the heading of the claim generally references
> "False Misrepresentations," the body of the count consists
> of a paragraph stating various means of unfair competition
> and conclusory statements regarding Defendant's control
> over the Joint Venture and the pool of customers, leaving
> the Court unclear as to what claim is actually being alleged
> in Count Eight. On this basis alone, the claim can be
> dismissed.

(Doc 62 – Pg 7.) In other words, ARPIC failed to correct its impermissible shotgun

pleading. Although ARPIC re-labels its unfair competition claim as being "based on

false misrepresentations," the claim still includes general language that an unfair

competition claim can include both a fraudulent-misrepresentation theory and a misappropriation-of-trade-secrets theory. (Doc 39 – Pgs 24, 42.)[4]

Second, the district court found:

> the conclusory allegation that Defendant and ARPIC "compete for the same pool of customers" is contradicted by the facts alleged in the First Amended Complaint. Specifically, Plaintiff alleges that their sales agents assist companies in entering and doing business in Saudi Arabia, (*id.* ¶ 1, 26–27, 66), a far cry from Defendant's manufacture of gas turbines and compressors, (*id.* ¶¶ 91–92). Thus, Count Eight can also be dismissed on this basis. *See King Ranch, Inc. v. King Ranch Contractors, LLC*, No. 6:12-cv-597-Orl, 2013 WL 2371246, at *11 (M.D. Fla. May 30, 2013).

The district court's finding are supported by both the allegations in the amended complaint and by Florida law.

Appellants argue that "ARPIC specifically and definitively alleges that Siemens Energy made false representations to Saudi Aramco about ARPIC's involvement in the Joint Venture" and that these allegations sufficiently state a claim of unfair competition under Florida law. (Appellants' Br. at 33.) However, the

---

[4] Although ARPIC alleges Siemens Energy has "used" ARPIC's "proprietary information and trades secrets," (Doc 39 – Pg 24) it does not appear that this is part of ARPIC's unfair competition claim. (*See* Doc 39 – Pgs 24, 42.) In any event, any claim related to trade secrets should be asserted separately from a claim for fraudulent misrepresentation and dismissed as preempted by the Florida Uniform Trade Secrets Act, which "clearly precludes common law claims based on a theory of misappropriation of trade secrets." *See Allegiance Healthcare Corp. v. Coleman*, 232 F. Supp. 2d 1329, 1336 (S.D. Fla. 2002).

singular allegation of false misrepresentations, without more, is insufficient to state a claim for unfair competition under Florida law. Specifically, ARPIC does not cite to a single paragraph from the amended complaint to support its argument that the amended complaint details customer confusion resulting from Siemens Energy's conduct. (Appellants' Br. at 34.) This is because the amended complaint does not contain any such allegation regarding customer confusion. Unlike the plaintiff in *Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314 (M.D. Fla. 2007), ARPIC has not alleged that there was any customer confusion on Saudi Aramco's part as a result of the alleged false representations.

Finally, the district court was correct that the conclusory allegation that Siemens Energy and ARPIC compete for the "same pool of customers" is "contradicted by the facts alleged in the Amended Complaint." (Doc 62 – Pgs 7-8.) ARPIC argues that it has "demonstrated enough of a similarity in business with [Siemens Energy] to survive a motion to dismiss" because ARPIC alleges that "ARPIC and [Siemens Energy] (and everyone else in the [oil and gas market]) are effectively competing for business from a single customer — Saudi Aramco." (Appellants' Br. at 35.) This broad and sweeping statement is not sufficient to cure its pleading deficiencies, and in any event, other allegations in the amended complaint paint a different picture as to ARPIC's and Siemens Energy's businesses. (*See* Doc 39 – Pgs 6, 15-16, 20, 22.)

Appellants also argue that the district court confused the roles of ARPIC and ARTC in dismissing this claim, noting that ARPIC engages in joint ventures formed with foreign entities to manufacture and service equipment for oil and gas applications, just as it did in this instance (rather than serving as a sales agent to foreign companies like ARTC). (Appellants' Br. at 35.) However, the allegations in the amended complaint cited by the district court include those related to ARPIC:

- "For more than forty years, Al Rushaid has played an important role in the development of Saudi Arabia's oil and gas industry and aided foreign manufacturers of oilfield equipment in gaining access to the lucrative Saudi market." (Doc 39 – Pg 1.)

- "Thus, partnering with a Saudi-based entity was legally, politically, and practically essential for foreign companies wishing to sell or distribute their products to Saudi customers, or to manufacture and/or service products in Saudi Arabia." (Doc 39 – Pg 6.)

- "Since its inception in 1978, Al Rushaid has acted as the Saudi partner for innovative companies from around the world seeking to respond to the development needs of Saudi Arabia and penetrate the Saudi market." (Doc 39 – Pg 6.)

- "The importance of ARPIC's participation and its familiarity with the Saudi laws, rules, practices, and business customs was underscored in the "Statement of Intent" to the BVA . . ." (Doc 39 – Pg 14.)

Further, it is clear that, like ARTC, ARPIC merely partners with foreign companies seeking to sell the foreign company's equipment in the Saudi Arabian market. There are no allegations in the amended complaint that ARPIC manufactures, sells, services or distributes its own equipment such that it could directly compete with Siemens Energy for the same customers. (*See, e.g.,* Doc 39 – Pg 15 ("Pursuant

35

to the BVA, it was agreed that the Joint Venture would fulfill all purchase orders issued to DRG by Saudi Aramco that fell within the 'business' of the Joint Venture").) Accordingly, the district court did not err in determining that the amended complaint alleges that ARPIC and Siemens Energy are not comparable in their business lines.

Further, even if ARPIC, as a minority owner of the Joint Venture, could bring claims that Siemens Energy was competing with the Joint Venture, ARPIC has explicitly alleged that Siemens Energy's and DRG's products were "very different" and they had "distinct product lines" — "DRG's products focused on oil and gas whereas Siemens' products focused on industrial applications" — contradicting any allegations that ARPIC and Siemens Energy directly competed in a similar business. (Doc 39 – Pgs 20, 22.)

Appellants' suggestion that ARPIC and Siemens Energy share the same pool of customers simply because Saudi Aramco is "the only customer that matters" in Saudi Arabia is insufficient, given the differing product lines as alleged in the amended complaint and the different services or roles that ARPIC and Siemens have in the oil and gas industry. *See King Ranch, Inc. v. King Ranch Contractors, LLC*, No. 6:12-cv-597-Orl-37KRS, 2013 U.S. Dist. LEXIS 76777, at *20-21 (M.D. Fla. Jan. 29, 2013) (dismissing unfair competition claim where plaintiff failed to plead that it was in the same business or provided the same services to common customers of the defendant).

Appellants attempt to sidestep this reality by noting that the Florida Supreme Court has interpreted the competition requirement to require a showing of "similarity in businesses of the parties" rather than direct competition. (Appellants' Br. at 35.) But as the district court noted, based on the allegations in the amended complaint, ARPIC and Siemens Energy do not have comparable businesses. (Doc 62 – Pg 8.)

## IV. THE DISTRICT COURT DID NOT ERR IN DISMISSING ARTC'S UNJUST ENRICHMENT CLAIM FOR FAILURE TO STATE A CLAIM

To state a claim for unjust enrichment under Florida law, ARTC must plead that: "(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the conferred benefit; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*, 1 So. 3d 400, 404 (Fla. 3d DCA 2009) (quoting *Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla.*, 667 So. 2d 876, 879 (Fla. Dist. Ct. App. 1996)).

The district court found:

> the Court is unable to address the merits of Defendant's arguments because it is entirely unclear what claim ARTC is attempting to allege. In Count Eleven, ARTC alleges that it conferred a direct benefit on Defendant "and/or entities it acquired[.]" (Doc. 39, ¶¶ 243–245). Based on ARTC's use of the "and/or" conjunction, the Court is unclear if ARTC is alleging that Defendant directly benefited from its actions or if it seeks to hold Defendant

> liable—directly or vicariously—for the conduct of DRG. Because it is unclear exactly what theory of liability ARTC is alleging, this Court would essentially be issuing an advisory opinion on the viability of claims that may or may not have been asserted. Accordingly, Count Eleven will be dismissed for failure to comply with the minimum pleading standards without further analysis."

(Doc 62 – Pgs 8-9.)

ARTC argues that the district court erred in finding a lack of clarity in ARTC's unjust enrichment claim because "the use of the 'and/or' conjunction was appropriate because Florida law provides that an unjust enrichment claim may be based on theories of direct and vicarious liability." (Appellant Brief at 36.) ARTC's argument misses the mark. Siemens Energy should not have to guess what ARTC's basis is for liability of its claim. As noted by the district court, "[b]ecause it is unclear exactly what theory of liability ARTC is alleging, this Court would essentially be issuing an advisory opinion on the viability of claims that may or may not have been asserted." (Doc. 62 – Pg 8.)

Moreover, "[u]nder Florida law, no unjust enrichment claim will lie unless the plaintiff conferred a direct benefit on the defendant." *Wilson v. Everbank, N.A.*, 77 F. Supp. 3d 1202, 1236 (S.D. Fla. 2015). While "direct contact" is not required to state a claim for unjust enrichment, a "direct benefit" is required. *Id.* In this respect, an unjust enrichment claim may survive a motion to dismiss "where the plaintiff alleges conferral of a benefit on a defendant through an intermediary." *Id.* at 1237.

ARTC's claim does not plead as much. In Count 11, ARTC uses the "and/or" conjunction in every substantive sentence making up this count, making it unclear whether Siemens Energy is even a target of this claim. In reciting the elements of the unjust enrichment claims, ARTC alleges:

- Siemens Energy "**and/or** entities it acquired, received, and retained the benefit of the revenues from the sale of DRG products…" (Doc 39 – Pg 47 (emphasis added).)

- "Permitting Siemens **and/or** entities it acquired to retain the benefit of the revenues…would unfairly give them the benefit of ARTC's property and efforts." (Doc 39 – Pg 47 (emphasis added).)

- "Equity and good conscience forbid Siemens Energy **and/or** entities it acquired from retaining the benefit of ARTC's efforts and commissions…" (Doc 39 – Pg 47 (emphasis added).)

The district court is correct that it is entirely unclear whether ARTC is alleging that Siemens Energy received a direct benefit by retaining the commissions allegedly owed to ARTC, or whether some other entity retained a benefit. ARTC attempts to rescue its unjust enrichment claim by noting that the Sales Agreements that govern the payment of commissions are between ARTC and "various DRG entities," not Siemens Energy. (Appellate Brief at 38.) However, ARTC ignores the fact that the "various DRG entities" that are party to the Sales Agreement are included in this claim. By including the entities that Siemens Energy acquired, ARTC's claim is pled such that it alleges that the contracting parties themselves received and retained the benefit of the revenues from the sales of its products. Under Florida law, "an unjust

enrichment claim is precluded by the existence of an express contract between the parties concerning the same subject matter" and can only be plead in the alternative "where one of the parties asserts that the contract governing the dispute is invalid." *Wilson*, 77 F. Supp. 3d at 1220 (finding the unjust enrichment claim precluded where the contracts, the authenticity of which were not contested, governed the subject of the dispute). As no party has asserted that the contract is invalid, and ARTC states a claim against the contracting parties for unjust enrichment, the claim fails.

Accordingly, the dismissal of ARTC's unjust enrichment claim should be affirmed.

## **CONCLUSION**

For the foregoing reasons, Siemens Energy respectfully requests that this Court affirm the district court's order of dismissal.

Dated this 15th day of February 2024.

Respectfully submitted,

*/s/ Brendan D. Cook*
Brendan D. Cook
Courtney Giles
BAKER & McKENZIE LLP
800 Capitol Street, Suite 2100
Houston, Texas 77002
Telephone: (713) 427-5000
Facsimile: (713) 427-5099
brendan.cook@bakermckenzie.com
courtney.giles@bakermckenzie.com

and

Jodi A. Avila
BAKER & McKENZIE LLP
1111 Brickell Avenue, Suite 1700
Miami, Florida 33131
Telephone: (305) 789-8900
Facsimile: (305) 789-8953
jodi.avila@bakermckenzie.com

**COUNSEL FOR APPELLEE
SIEMENS ENERGY, INC.**

# CERTIFICATE OF COMPLIANCE

I hereby certify that this Brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7). According to the Microsoft Word program on which it is written, and excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), this brief contains 9,665 words.

/s/ Brendan D. Cook
Counsel for Appellee

## CERTIFICATE OF SERVICE

I certify that on February 15, 2024, I electronically filed the foregoing document with the Clerk of Court using CM/ECF and entered the required information on the web-based system on the Court's website. I also certify that the foregoing document is being served this day via CM/ECF on Ronald D. Edwards, Jr., Counsel for Appellants.

*/s/ Brendan D. Cook*
Brendan D. Cook